THE STATE OF IOWA, Appellee, v. MATHIAS MARTIN
O'DONNELL, Appellant.

**HOMICIDE:** Murder—Specific Intent to Kill—Non-Justifiable In-
1 ference. Evidence which establishes that a homicide was with
malice aforethought, was willful, was deliberate and was premedi-
tated, does not necessarily justify the inference that it was *with
the specific intent to kill.*

PRINCIPLE APPLIED: Uxoricide. Defendant, with a tyran-
nical and unfeeling disposition aggravated by drink, was subject,
for a period of time not shown, to habitual outbursts of savagery,
which he vented upon his wife by cursing her, by tearing her
clothing from her person, by unmercifully choking her, and by
other aggravated and inexcusable assaults and batteries. But
none of these assaults were made with a deadly weapon and none
with intent to kill. Deceased was found in the basement of her
home, naked, unconscious, grimy with dirt, and covered with
numerous and horrible wounds, manifestly not self-inflicted. None
of her bones were fractured and no one wound was fatal, but all
combined were. These wounds might have been inflicted with a
four-foot iron poker, something over half an inch thick, though no
blood was found thereon. As part of the transaction, deceased
either fell or was thrown down the basement stairs. The condi-
tion of the upstairs room indicated a struggle and that the wo-
man's clothing had there been torn from her body. *Held* insufficient
to show beyond a reasonable doubt that the assault was *with the
specific intent to kill.*

**CRIMINAL LAW:** Appeal—Power of Court to Modify Judgment.
2 After finding that a verdict of murder in the first degree is not
warranted *by the evidence*, the Supreme Court has no power, under
Section 5462, Code, 1897, to pass upon the evidence and determine
what the true verdict should be. Said section, in order to avoid
the taint of unconstitutionality, must be construed as giving the
court power, on appeal, to render such judgment only *as the law
demands*, not such judgment as the Supreme Court may think *the
evidence demands*.

**CONSTITUTIONAL LAW:** Construction, Etc.—Construction Lead-
3 ing to Invalidity—Avoidance. The desire of the court is to
shield, if possible, every statute from every charge of unconsti-
tutionality. Between two possible constructions, the court will
hold to that which preserves, rather than to that which destroys.

PRINCIPLE APPLIED: Section 5462, Code, 1897, authorizes the Supreme Court, *inter alia*, on appeal by defendant in a criminal case, to "render such judgment on the record as the law demands," and to "modify the judgment" appealed from, or to "render such judgment as the district court should have done," or to "reduce the punishment." (1) If this statute be construed to authorize the court, after finding that a verdict of murder in the first degree was unwarranted *by the evidence*, to pass upon the evidence and determine *what the true verdict should be*, it would be unconstitutional because:

a. Depriving the accused of a jury trial. (Art. 1, Sec. 9.)

b. Enlarging the jurisdiction of the Supreme Court beyond that of a "court for the correction of errors at law." (Art. 5, Sec. 4.)

· (2) If this statute be construed to give the court power to render such judgment only *as the law demands*, then it would be clearly constitutional. *Held*, the latter construction must prevail.

**HOMICIDE:** Murder—Appeal—Verdict Unsupported by Evidence—Unavoidable Reversal. A reversal and retrial *inevitably* follows a holding by the Supreme Court that a first degree murder verdict is unwarranted *by the evidence*. The court possesses no constitutional or statutory right to substitute itself for a trial jury and to pass upon the evidence and to determine therefrom the degree or grade of guilt and fix the punishment accordingly, notwithstanding Section 5462, Code, 1897, authorizing the Supreme Court on appeal to "modify the judgment," or to "render such judgment on the record as the law demands," or to "reduce the punishment." (See Art. 5, Sec. 6, Const.; Sections 4730—4732, Code, 1897.)

**CRIMINAL LAW:** Appeal—Murder—Death Sentence—Change of Punishment—Power of Court. The appellate court has no constitutional right to directly review a *verdict*, *Held*, inasmuch as the jury, in the trial of a first degree murder charge, has the sole and exclusive power to say whether the death sentence or life imprisonment shall be imposed, that the appellate court could not change such punishment on appeal without, in effect, doing the unallowable thing of entertaining an appeal *direct from the jury's verdict*.

**CRIMINAL LAW:** Appeal—Presenting Question to Trial Court—Modifying Verdict. Conceding, *arguendo*, that the appellate court has power to modify the verdict of a jury, imposing the death sentence for first degree murder, yet it has no such power unless it appears that application to modify was first made *to the trial court*.

**HOMICIDE:** Evidence—Other Offenses. On a trial for murder, evidence of assaults and batteries other than the one resulting in

death, committed by the accused upon the deceased, is admissible for the purpose of showing (a) the mental attitude of the accused and deceased toward each other on the date of the alleged crime, (b) malice on the part of accused, and, perhaps, (c) deliberation and premeditation.

HOMICIDE: Murder—Other Offenses—Cautionary Instructions—
8 Necessity. The introduction, on a murder trial, of an undue and unusual amount of evidence tending to show brutal and repulsive conduct on the part of accused toward the deceased prior to the fatal encounter may necessitate an instruction to the jury *that proof of malice and premeditation is not, of itself, sufficient to justify the finding of a specific intent to kill.*

HOMICIDE: Murder—Proof of Killing as Bearing on Deliberation
9 and Premeditation. Mere proof of the killing of deceased raises no presumption that such killing was done deliberately or premeditatedly, and the jury should be so instructed.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

SATURDAY, MAY 13, 1916.

A JURY found the defendant guilty of murder in the first degree, and directed that capital punishment be inflicted. Sentence passed accordingly, and defendant appeals.— *Reversed* and *Remanded.*

*A. T. Marshall* and *J. M. C. Hamilton,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for appellee.

SALINGER, J.—Inez, the wife of the defendant, was discovered in a dying condition, because of statements made by defendant when more or less intoxicated, which led to an entrance into the building wherein the couple lived. The searchers went to the basement because of groans heard, and the woman was found lying on its floor, naked and unconscious. She died soon thereafter without having spoken intelligently, and from the effect of many and horrible wounds

1. HOMICIDE: murder: specific intent to kill: non-justifiable inference.

which, in their very nature, could not have been self-inflicted. No witness other than the defendant is able to speak of his own knowledge concerning the assault. The State charges defendant with causing the death with blows and bruises.

We are of opinion that the sentence of death imposed should not stand. The majority reaches this conclusion because it finds that the evidence does not justify a conviction for murder in the first degree. While we are agreed that the sentence of death should be canceled, some members of the court think this may be accomplished without reversing for insufficiency of the evidence to sustain a verdict of murder in the first degree. In these circumstances, we feel impelled, under the rule in *State v. Asbury*, 172 Iowa, at 616, to refrain from more discussion of the evidence than is necessary to determine whether a conviction for murder in the first degree can be sustained.

The effect of canceling the death sentence by a reversal on the ground that an unwarranted verdict was returned, and canceling it while sustaining the verdict, is so different that it becomes necessary to determine whether the verdict returned is warranted. Section 4728 of the Code defines murder in the first degree to be, *inter alia*, any kind of "wilful, deliberate and premeditated killing." To sustain the verdict, we must be able to find not only evidence of murder, but of additional elements wnicn are as essential to convict of murder in the first degree, as is evidence that any murder was done. That this is so, is settled by our decisions that the indictment is not one for murder in the first degree if it charge no more than that the killing is merely wilful and premeditated *(State v. Boyle,* 28 Iowa 522)*;* that, in addition to charging that the assault was wilful, deliberate and premeditated, it must be charged that the blow constituting the assault was dealt with the pur⸗ pose of killing *(State v. McCormick,* 27 Iowa 402; *State v. Watkins,* 27 Iowa 415)*;* that the charge of the specific intent to kill must not by the indictment be left to inference *(State v. Linhoff,* 121 Iowa 632)*;* and by our holdings that the proof

must tend to show a specific intention to take life; that premeditation implies more than deliberation and means to meditate and deliberate before concluding to do the deed; that it means not only to take life wilfully, but to predetermine and to contrive by previous meditation *(State v. Gillick,* 7 Iowa, 287, 311; *State v. Johnson,* 8 Iowa 525; *State v. Sopher,* 70 Iowa 494; *State v. Hockett,* 70 Iowa 442; *State v. Shelton,* 64 Iowa 333; *State v. Perigo,* 70 Iowa 657). The existence of this intent cannot be presumed as a matter of law, *State v. Carver,* 22 Ore. 602. While the essential premeditation need not be of long duration, and may be established by inferences justifiably to be drawn from the circumstances attending the crime in inquiry, it will be found that these are more often than otherwise drawn from the nature of the weapon employed, if any, and the manner of its use *(Commonwealth v. Woodward,* 102 Mass. 155), or drawn from the manner of obtaining the weapon, and from evidence bearing on whether it was provided by accused beforehand, rather than seized hastily in the heat of an affray *(Taylor v. State,* 108 Ga. 384).

We find that the evidence as a whole tends rather to negative than to prove the existence of this essential specific intent. As to the suggestion that the prior conduct of defendant made it a jury question whether the last assault was made with specific intent to kill, we have this to say: The appellant was of a tyrannical and unfeeling disposition, which drink exaggerated. He made prompt settlement of domestic differences with curses and blows. On each recurring carousal, he harked back to that time in which the right of human brutes to whip their wives was unquestioned. But none of these assaults, bad as they were, were made with a deadly weapon. Giving to each recurring one its most sinister aspect, none was of a character more grave than an aggravated and inexcusable assault and battery. None of these prior acts were done with intent to take life. Therefore, they afford no sufficient evidence upon which to find the existence of such intent in the last assault. See *Shelton v. State,* 34 Tex. 662. The indict-

ment charges the killing was done by means of a heavy iron poker, or other deadly weapons to the grand jury unknown. There was found in the house a poker, an iron rod about four feet long and something over half an inch thick. A blow from it, when dealt by a strong man, even with moderate force only, would readily break bones or crush a skull. No bones of the deceased were broken, nor was her skull fractured; and, while a wound across the forehead, the most severe single wound found, penetrated to the bone, the physicians agree that it was not mortal. No blood was found on the poker, and the only support for the inference which the State draws that it was used as a weapon, or that a deadly weapon was used, is that it was found in the room where the parties lived, and the nature of the wounds. The record tends to show that deceased either fell or was thrown down the basement stairs; and, if appellant as a witness may be believed, such fall occurred at least twice. While it is difficult to account for all the wounds by such falls, even one such plunge may well have produced many of the abrasions and bruises which disfigured the body. The condition of the living room and of its furniture, and the clothing scattered about, indicate that a struggle had taken place, and that the clothing was removed or torn from the woman's body before the parties went or fell into the basement. The inference is strengthened because the naked body of the deceased was grimy with dirt and coal dust off the basement floor, and because upon this floor were tracks of bare feet and other marks such as might have been produced by crawling upon or dragging a body across that floor. No one mortal wound or injury was revealed by the superficial examination of the corpse or by the autopsy, but it is reasonably certain that the effect of all the injuries combined was sufficient to cause death upon a body weakened and devitalized by a most wretched life. The last assault was not essentially more brutal than the ones that preceded it; for the evidence tends to show that defendant had on other occasions stripped the clothing from his wife and beaten and choked her unmer-

cifully.   The natural, if not the only reasonable, conclusion is that this final attack was one of habitual outbursts of savagery. While each and all of them were inexcusable and outrageous beyond words, they fail to show beyond a reasonable doubt the specific intent to kill.   Even those of us who do not in terms agree that the evidence was insufficient, do say that a doubt may reasonably be entertained as to whether a specific intent to kill is sufficiently established; that the existence of this intent is a more open question than any other question presented; and the strongest position taken by them is that, while the State is not wholly without evidence of such intent, it must be conceded that its showing thereon is weak, and that canceling the death sentence may be more readily agreed to because of their belief that we have a discretionary power to reduce the punishment to life imprisonment.   In a word, it seems to us that we are in substance and effect agreed that the evidence does not satisfactorily sustain a conviction of murder in the first degree.

II.   It is suggested that Code Section 5462 enables this court, without reversal, to change the capital sentence to one of life imprisonment.   A fair construction of that statute is

2. .CRIMINAL LAW: appeal: power of court to modify judgment.

that, if it "do not affect the substantial rights of the parties," the Supreme Court may, *inter alia*, not only reverse, but may (1) modify, or (2) "render such judgment on the record as the law demands," or (3), what is in effect the same thing, "render such judgment as the district court should have done."

What the legislature intended by these grants must be resolved under the rule that statutes are not to be so construed as to make their constitutionality even a matter of fair doubt,

3. CONSTITU- TIONAL LAW: construction, etc.: construc- tion leading to invalidity: avoidance.

if such construction be in reason avoidable. *Hunter v. Colfax Cons. Coal Co.*, 175 Iowa 245.   The Constitution, Article 5, Section 4, constitutes this court one "for the correction of errors at law."   It is plain that to set aside a verdict because it is not sustained by the evidence is an

appellate correction of an error at law. Wherefore, we have not hesitated to reverse on the ground that the evidence fails sufficiently to show premeditation. *State v. Nolan,* 92 Iowa 491. To correct the failure to render a judgment due as matter of law, or for this court to enter one thus demanded, may be constitutionally permitted, because either is clearly the correction of an error at law, or the avoiding the making of such error. The act of rendering a judgment at any stage which does no more than the law commands, affects no substantial right of the parties. It is claimed for *State v. McCormick,* 27 Iowa 402, and *State v. Thompson,* 31 Iowa 393, that, in principle at least, they sustain changing a sentence of death to one of imprisonment for life, without a reversal. These were cases in which the indictment did not authorize the verdict returned, and in which, moreover, the defendant consented to the modification. In other words, a jury rightly found on the evidence that murder in the first degree had been done—and the verdict was unwarranted, not because the jury erred, but because the indictment was not what it should have been in view of the evidence obtainable and obtained. A true verdict for murder in the first degree is as well a verdict that a murder punishable by imprisonment for life or a fixed time has been committed. To enter a proper judgment upon a proper verdict is but to enter the judgment which the law demands. And the underlying principle has been, in effect, applied in civil cases, wherein, for instance, judgment was entered for defendant despite verdict for plaintiff, because some item of proof essential to a recovery had been omitted.

The exact question is whether, after finding that a verdict of murder in the first degree is not warranted by the evidence, we can, in effect, pass upon the evidence and, in effect, determine what the true verdict should be, without going beyond what is a correction of an error at law, and therefore engaging in what is violative of the Constitution. Where the only objection to the verdict is that the

4. HOMICIDE: murder: appeal: verdict unsupported by evidence: unavoidable reversal.

court has misconstrued the indictment, there is no misdoing or fault on the part of the jury. There is a true verdict which includes a finding of murder in the second degree. Changing the penalty to one which is provided for the crime which such verdict includes, is to enter a judgment which the law demands on the record. But where the jury finds a degree of guilt without warrant in the evidence, or contrary to it, the verdict is not rightful; it cannot be sustained as written; and the taint which compels its disregard as a verdict of murder in the first degree affects its being a verdict at all. To apply to a sound verdict the inevitable consequences which the law attaches to anything included therein, is one thing; to find that there has not been a lawful verdict, and thereupon to enter a judgment of punishment upon the evidence, is quite another. Stripping it to the bone, the last is a substitution of the Supreme Court for a trial jury; is, therefore, a violation of the Constitution, because it denies the defendant a trial by jury and because it limits the accused to trial by one jury which has not fairly tried him; and it violates the provision which limits the powers of that court to the correction of errors at law, and which prohibits it from weighing evidence except in chancery appeals. If the statute permission to render such judgment as the law demands is construed to permit this, the validity of the statute is, to put it at its mildest, open to very serious question: first, because of the denial of due trial by jury thus worked; second, because the Supreme Court has no powers other than the Constitution grants,—and it provides, in terms, that the legislature may restrict these,—which amounts to an express declaration that the legislature may not enlarge these granted powers. Wherefore, a statute which permits the Supreme Court to weigh evidence, determine the degree of guilt, and fix the punishment, is an enlargement prohibited by the Constitution. All this may in reason be obviated by construing the statute to give power to render such judgment only as is due as matter of law. Without reference to validity, that part of the statute which authorizes

the Supreme Court to render such judgment as the district court should have done, should not be controlling. Should a district court, on finding that a verdict of murder in the first degree was unwarranted, sentence the accused to imprisonment for life, which is the maximum punishment provided for murder in the second degree, we should without hesitancy reverse such action; and the statute should not be strained into requiring us to do in the stead of the district court what we could not approve of had that court done it. When we determine that a jury has found a degree of guilt which the evidence did not authorize, we find that there has been a mistrial, and no play upon words can establish that the defendant should be denied a trial by a proper jury, proceeding properly. Suppose we are satisfied that the evidence proves murder in the second degree. We are not the tribunal provided by the Constitution to weigh this evidence as an original proposition; and the evidence may not be the same on a retrial. If it shall be, still the jury has by law the power to acquit, though we are satisfied that defendant is guilty of murder in the second degree. On this, the responsibility is not ours. If, on retrial, the district court should charge the jury that, upon the evidence, it must fix the sentence at life imprisonment, or must find the defendant guilty of some stated crime included in the indictment, we should, of course, reverse. That which we would be compelled to disapprove, if done by the trial court, is just what we would, in effect, do if here we denied new trial and fixed the punishment at life imprisonment.

III. Section 5462, Code, in terms, permits us to "reduce the punishment." We have no occasion to enter upon an academic inquiry as to whether it would be violative of the Constitution to reduce a punishment imposed by the court. The question we have is whether the Constitution grants the Supreme Court power to review the action

5. CRIMINAL LAW: appeal: murder: death sentence: change of punishment: power of court.

of a trial jury, *simpliciter*. Section 4730, Code, 1897, is that, if the jury finds the defendant guilty, it must inquire, and by

its verdict ascertain and determine, the degree; but if defendant enters a plea of guilty, the court must, by examination of witnesses, determine the degree, and in either case must enter judgment and pass sentence accordingly. Code Section 4731 is that if, on trial of an indictment for murder, the jury finds the defendant guilty of murder in the first degree, it "must direct in its verdict whether the punishment shall be death or imprisonment for life at hard labor in the penitentiary, but if the defendant pleads guilty, the court shall so direct, and in either case must enter judgment and pass sentence accordingly."

Section 4732 of the Code is:

"When the court or jury shall direct that a defendant be punished by death, the court pronouncing judgment shall fix the day of the execution thereof."

It would seem to be beyond debate that, unless there be a plea of guilty, these statutes give to the jury the exclusive power to determine the degree of the offense, and to direct which of the two punishments fixed by statute shall be inflicted. What the court alone may do on plea of guilty, the jury alone may do upon trial. The limitation is emphasized by the provisions of Section 4732, which leaves the court no power beyond pronouncing judgment in accordance with the verdict; and Section 5718-a13, Code Supp., 1913, that, on conviction of felony punishable by imprisonment in the penitentiary or county jail, or by fine, or both, the court may elect to impose the lighter penalty, has bearing. It follows that, while the trial court may say that there shall be no punishment upon the verdict because a new trial is granted, it may not say that, though the jury, which has been made the sole judge of which of two punishments shall be suffered, has chosen one of these, the court will choose the other.

In *State v. Hockett,* 70 Iowa, at 444, speaking of the constitutionality of the statute which gives the jury this power, we say that the court simply pronounces judgment in accordance with the declared will of the general assembly; that, con-

ceding that the judicial power is exclusively in the courts, it is but power to declare the law as enacted by the general assembly; that, as applied to a case like the one at bar, it is the province and duty of the court to pronounce judgment on the verdict of the jury, and "that a judgment, though pronounced by the judge, is not his sentence but the sentence of the law. It is the certain and final conclusion of the law following upon ascertained premises."

In *State v. Junkins,* 147 Iowa 588, the power to reduce seems to have been assumed, or at least to have been conceded to exist, for the purpose of argument, by both this court and the counsel. But it was not necessary to go into the question of power, because we determined the point on the ground that no reduction was justified. However, much of the argument indicates that there is no such power. We speak of the punishment as one "assessed by the jury," and of the statute, as one "which confides to the jury, and the jury alone, the option of assessing it." We point out that the safeguard against unwarranted capital punishment is something other than change by this court, in that we say that, if great popular excitement makes such likely, it is ordinarily within the power of the court, by temporary postponement, or by granting a change of venue, to obviate this.

Sections 4143, 4144, 4146, and 4147, Jones & Addington's Illinois Statutes, accomplish in substance what our statute does, except that the power to fix the punishment is given to the jury in more cases. Interpreting these statutes, it has been held, in *People v. Joyce,* 246 Ill., at 137, that "the court is not given any discretion in fixing the punishment, and can therefore exercise none." *Young v. People,* 6 Ill. App. 434; *Shields v. People,* 132 Ill. App., at 139, declare that, when the power to assess a fine is given to the jury in one case, and to the court in another, the imposition of a fine by one not authorized to assess it is an act wholly without authority, and so much thereof as is thus done by either may be stricken out as surplusage. The power to fix punishment

given by such statutes to court or jury is the same power in either case; the power of the jury is that which the court possesses on plea of guilty, and the power may be conferred on either. *People v. Joyce,* supra; *Coates v. People,* 72 Ill. 303; *People v. Illinois St. Reformatory,* 148 Ill. 413. The last case treats it as an interchangeable power. The right to fix punishment is a giving of "power" as between the court and jury. See *Coates v. People,* 72 Ill., at 305; *Hamilton v. People,* 71 Ill. 498; *People v. Murphy,* 202 Ill. 493, 496. There is a conflict in authorities as to the treatment of unauthorized parts of judgments *(Ex parte Page,* 49 Mo. 291; *Ex parte Cox* [Idaho], 32 Pac. 197; *Ex parte Kelly,* 65 Calif. 154); and later cases in that state, and *Miller v. Snyder,* 6 Ind. 1, hold that, if a judgment be in part authorized and in part in excess of power, the entire judgment is void. On the other hand, *Elsner v. Shrigley,* 80 Iowa 30; *In re Graham,* 138 U. S. 461; *In re Graham* and *In re McDonald,* 74 Wis. 450; *Sennot's* case, 146 Mass. 489; *Ex parte Shaw,* 7 Ohio St. 81; *Ex parte Van Hagan,* 25 Ohio St. 426; *In re Sweatman,* 1 Cow. (N. Y.)* 144, followed in *People v. Liscomb,* 60 N. Y. 559; *People v. Jacobs,* 66 N. Y. 8; and *People v. Baker,* 89 N. Y. 460, hold that only so much of the judgment is void as goes beyond authority. As all the cases agree that, in so far as the judgment *is* unauthorized by law, it is void, and as, where the court fixes or changes a punishment when the jury alone has power to fix punishment, *all* that is done by the court is void, we have no occasion to resolve this conflict.

It is manifest, then, that, as the election between two statutory punishments is left solely to the jury, any change in such punishment this court makes changes that election and deals with an act wholly that of a jury. Now, while this court often, and rightly, does that which affects the action of a jury, it does this by reviewing what the district court has done as to such action. Whatever we do as to a verdict, we do by inquiring into whether the trial court has properly granted or denied a motion for a new trial, as the case may be.

Our reports are filled with practice decisions whereby appeals have been dismissed because the abstract failed to recite more than the return of a verdict. The Constitution gives us no power to review a verdict, and those decisions rest upon that self-evident proposition. If we review this particular punishment, we violate the Constitution by dealing directly with the action of a jury. It is the jury, not the court, that imposed this punishment. It has no power to change that punishment; has nothing but the merely formal power to formulate into a sentence what the jury has predetermined upon exclusive grant from the legislature. Hide it under words never so much, it remains true that, in this particular and exceptional case, if we change the punishment, we deal directly with the action of a jury, and do not touch the action of the district court.

Having once determined that a jury has failed of its duty, then to fix the punishment by determining what the evidence establishes is an attempt to turn this court into a substitute jury, no matter in what guise we proceed. If we may say on the evidence adduced before the first jury what the punishment shall be, it does not stop with power to say that it shall be the maximum one with which murder in the second degree is visited, but carries with it the power to fix any punishment which the law provides for any offense included in the indictment. If we may consider the evidence, and thereupon fix the punishment at imprisonment for life, we have the right to fix it at that provided for assault and battery. It would simply annul the rule that prejudice is presumed from error. It would leave it open on each appeal to say whether one who has suffered from a verdict which is not sustained by the evidence shall have a new trial before a trial court and jury, or have a new verdict entered in the Supreme Court. That the justice of the law shall be worked upon this one particular defendant is indeed of the greatest importance. But more grave are the consequences of our usurping any power which the organic law has given to other tribunals.

2.

Waiving all this, how may the Supreme Court change this sentence, in the absence of any application to the district court for such change? Section 4105 of the Code provides that a judgment or order shall not be reversed for an error which can be corrected on motion in an inferior court, until such motion has been there made and overruled. Code Section 4106 is that the Supreme Court on appeal may review and reverse, although no motion for new trial was made below. These two have been construed together, and held to provide that, if an erroneous action be once called to the attention of the trial court, it need not be embodied in a motion for a new trial. to obtain appellate review; but that, if something complained of occurred after the cause was submitted to the jury, the appellate court will not entertain complaint thereof unless an opportunity was given below to make the correction sought here. If, then, it may be claimed that we do have power to modify the action of the jury, that leads nowhere; because, despite that concession, we yet cannot interfere, because no application to make this change was made below. The only method of invoking the action of the trial court on this head must, of necessity, have been some motion asserting that the penalty is not warranted by the evidence. The motion for new trial asserts that "the verdict is one of compromise and not a fair opinion of all the jurors." The only direct reference to the penalty is in Count 2 of the motion in arrest, page 97 of the abstract, which recites that the penalty assessed is not known to the laws of Iowa, because the verdict directs "capitol punishment." To this may perhaps be added Count No. 1, which, asserting that the verdict is not in accordance with the instructions of the court, is evidently intended to complain of the difference between "capitol punishment," and a direction by the jury that the "punishment shall be death."

6. CRIMINAL LAW: appeal: presenting question to trial court: modifying verdict.

We are firmly persuaded that we are limited to granting a new trial here, and cannot change the punishment imposed by the jury.

IV.  If the evidence of the State is to be credited, the defendant is so utterly brutal and depraved that ordinary human sympathy in his behalf is apt to fail him.  But he is not being tried, nor can we try him, for his general depravity.  He is not being tried, nor can we punish him, for the inhuman abuse, assaults and beatings inflicted upon his wife during their married life prior to the day on which she met her death.  The sole reason why this past conduct may properly be considered is for the light it may throw upon the real nature of the occurrence on the evening of January 10, 1914.

7. HOMICIDE: evidence: other offenses.

It is for the wrongful act alleged to have been committed that evening that he may be convicted and punished in this case.  This principle is vital, whether the accused be a person generally held in high repute or one of confirmed criminal habits and utterly worthless.  Where the evidence tends to show that the defendant is of the latter character, it is only natural that jurors should over-emphasize the importance and effect of defendant's previous misconduct, and the court should guard against this tendency by great vigilance and intelligent direction.  While the long-existing discord and treatment were competent to show the mental attitude of the husband and wife toward each other on the date of the alleged crime, and as a means of establishing malice on the part of the husband (State v. Cole, 63 Iowa 695), the persistency of the prosecution in piling up testimony of this nature beyond what would seem necessary for the legitimate purpose thereof could scarcely fail to impress the jury with the thought that proof of this gross cruelty and abuse on part of appellant established sufficiently his guilt of murder in the first degree.

8. HOMICIDE: murder: other offenses: cautionary instructions: necessity.

True, the jury were told by the court that the finding of a specific intent to kill was necessary to a conviction of murder

in that degree; but they were not told that, while the inference

of malice and also, perhaps, of deliberations

**9. HOMICIDE: mur-**
**der: proof of**
**killing as bear-**
**ing on delibera-**
**tion and pre-**
**meditation.**

and premeditation may be drawn from the previous ill treatment, yet proof of malice and premeditation is not of itself sufficient to justify the finding of a specific intent to kill;

nor were they told that mere proof of the killing does not raise any presumption that it was done deliberately or premeditatedly. And the intent to kill is not necessarily inconsistent with manslaughter or murder in the second degree. *State v. Phillips,* 118 Iowa 660, 677; *State v. Decklotts,* 19 Iowa 447. While we might not reverse for this alone, we feel constrained to say what we have so that it may be a guide on the retrial.—*Reversed* and *Remanded.*

EVANS, C. J., DEEMER, LADD, WEAVER, and GAYNOR, JJ., concur.

PRESTON, J., concurs in result.