STATE OF IOWA, Appellee, v. FRANK RICHARDSON, Appellant.

**CRIMINAL LAW:** Appeal and Error—Right of Review—Wrong
1  **Theory of Trial—Failure to Request Specific Instructions.** One may, on appeal, contend (a) that he was tried on the wrong theory, (b) that he was not guilty, and (c) that neither the evidence nor the law sustains the conviction, even though he asked no specific instructions on final submission to the jury, and even though the general questions involved in his defense were covered by the instructions given.

**CRIMINAL LAW:** Elements of Crime—Specific Intent to Injure—
2  **Wanton Carelessness—Rule of Natural Consequences.** Unintentionally and unknowingly injuring another by gross and reckless carelessness is not the equivalent of a *specific intent to injure such other;* in other words, the latter may not be found from the former. Phrased differently, the rule of natural consequences does not apply in such a case. So held under a prosecution for assault with intent to inflict great bodily injury, growing out of the reckless operation of an automobile.

**CRIMINAL LAW:** Elements of Crime—Specific Intent as Jury
3  **Question.** The existence of a specific intent as an element of crime is essentially, and at all times, a question of fact for the jury; therefore, the court may not instruct the jury that, upon the finding of certain facts, they *shall* find the existence of the specific intent.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD,
Judge.

TUESDAY, APRIL 3, 1917.

INDICTMENT charging defendant with the crime of as-
sault with intent to inflict great bodily injury upon one
Harry Horn, by operating and running an automobile over
said Horn with specific intent to inflict a great bodily in-
jury upon him and otherwise maltreat him, contrary to
statute. Defendant appeals from a conviction under this
indictment.—*Reversed.*

*J. H. Patton,* for appellant.

*George Cosson,* Attorney General, and *H. G. Lyman,*
for appellee.

SALINGER, J.—I.  A motion to direct

**1. CRIMINAL LAW:** verdict for defendant was made, renewed at
appeal and er-
ror: right of re- the close of all the testimony, was overruled,
view: wrong
theory of trial: and it is claimed it should have been sus-
failure to re-
quest specific tained.  It takes the ultimate position that
instructions.
the evidence shows conclusively that the col-
lision with Horn was accidental; that it was due, in part at
least, to the fact that, while defendant was traveling where
he had the right, his path was obstructed by Horn and his
automobile; and that the evidence as a whole shows con-
clusively that the collision was without specific intent or
intent of any sort to inflict a bodily injury upon Horn,
great or otherwise; and that, therefore, all of the evidence
will not warrant a verdict of guilty, should one be returned.
The overruled motion for new trial asserts that the ver-
dict is contrary to the evidence, not supported by sufficient
evidence, is the result of passion and prejudice, and is con-
trary to and not supported by law.

In this condition of the record, we fail to see the rele-
vancy of the argument by the State that "there is no request
for instructions upon any feature of the case.  The general

questions involved in the defense were fully covered by the instructions given, and the appellant is not in a position to complain in this court." It seems clear that he may complain that he was tried on the wrong theory, and was not guilty of the offense charged, and that neither evidence nor the law sustains the verdict returned, and that no judgment should have been entered upon it. We think, too, that the motion to direct and the motion for a new trial fairly raised these questions.

II. The defendant was driving a car 2. CRIMINAL LAW: which, as to brakes and other equipment, elements of crime: specific intent to injure: was in such condition as to interfere with wanton careless- efficient control, and perhaps power to stop. natural conse- quences. In violation of statute, he drove it without lights, and when it was not only dark, but there was a dust storm blowing, which would have greatly impaired the efficiency of lights had he carried them. The jury could find that he was driving at a speed prohibited by statute and, at any rate, at a speed that it was, under the circumstances, negligent to indulge in. He drove towards a place where Horn had his automobile standing, while sitting on his heels close to it attempting to repair a tire. Near and about this car stood other cars. All had lights, although, as said, the condition of the night interfered with sight, even though such lights were present. Defendant drove on under these conditions. Perhaps to avoid collision with one of the cars standing about, and, if you please, through not being sufficiently careful, he struck Horn and threw him some distance. The jury could find that thereafter he did not make a full stop. This, defendant and the inmates of his car explain with a claim that they did not know that anyone had been struck or injured, and supposed that what little jar they felt was caused by running over some small obstruction, like part of a tire, lying in the road. But the jury could also find that this

is not a good explanation. There is nothing upon which to find that defendant actually saw the ones he injured, or had any intention to injure them, or anyone. Horn himself makes it perfectly plain that he could see no one that was coming, nor see an unlighted car. There is every reason to believe, and it is not seriously disputed, that defendant could not—at any rate did not—see Horn, and undisputed that defendant and Horn never had words or trouble of any kind, and there never has been difficulty between them. So far from admitting that he had any intent to strike Horn or anyone, defendant says he did not know until an hour after the occurrence that he had struck Horn; that it was dark and he saw no one, and had no intention to strike Horn nor any person who was in the highway with an automobile. These facts constitute the vital premise. The controversy is over what it effects. The State argues that, while the conditions prevailing may argue that defendant could not have had a deliberate intent to injure Horn, what he did do was calculated to seriously injure, and did result in breaking Horn's leg six inches above the ankle; that the darkness, the dust storm, the condition of the car, the violation as to carrying lights, and the speed, instead of helping defendant, make out a case of reckless negligence, and that, the more serious were the obstacles to observing due care, the greater the negligence; that the more defendant persisted in operating under conditions which made it difficult to have due regard for the safety of others, the more negligent and criminal was he. As will presently appear, the court tried the cause on some such theory, and, for one thing, charged in Instruction 2 that, if defendant was driving a car, with brakes that were not properly working, in such way and at such speed that he could not stop or slow down when he met another object in the highway, the jury might regard this as a circumstance showing carelessness and a reckless disposition. Of course, the counter-

argument is that no negligence, no matter how reckless, can supply specific intent to injure a named person; in effect, that the situation is within a statement which we find in *Brown v. Commonwealth*, (Va.) 10 S. E. 745, that:

"Passion and malice are therefore inconsistent motive powers; and hence an act which proceeds from the one cannot also proceed from the other."

### 2-a

Let us concede that the jury could well find that defendant was recklessly negligent, and concede that he so operated his car as that he was guilty of the misdemeanor of violating certain statutes regulating the use of automobiles. This brings on for consideration what effect what is thus conceded should have. The court instructed that conviction on the indictment was warranted if, in addition to proving venue, the following matters be proved: (a) That defendant caused the automobile he was using on the public highway to run at the rate of speed at which the jury might find "he was going;" (b) that, in doing so, defendant was negligent and reckless; (c) that, by reason of such negligence and recklessness, his automobile struck Horn, and thereby caused his injury.

It was further charged: (1) While the law presumes negligence from not using lights at times required by statute, it may be negligent not to use lights earlier than that, if darkness prevails earlier. (2) If defendant was driving with brakes that were not properly working, in such a way and at such speed that he could not stop or slow down when he met another vehicle in the highway, the jury might regard this as a circumstance showing carelessness and a reckless disposition. (3) He might have turned to the left as the law directs, in which event he would not have injured Horn, who was rightfully where he was to repair his automobile, and who had the right to assume that all users of

the highway would use ordinary care to refrain from wantouly injuring him.    (4)    Drivers must assume that others are using the highway, and must use increased care in proportion as the view ahead is obstructed by darkness or dust storms.    (5) If defendant caused the automobile to run at the speed it was running when Horn was struck, and under the circumstances shown by the evidence, the jury should determine next whether "such act was intentional on his part."    (6) The operator of an automobile on a public highway must drive in a careful and prudent manner, and at a speed not dangerous to life or limb.    (7) While driving at more than 25 miles an hour is presumptive evidence of not driving in a careful and prudent manner, one may be guilty of careless driving though driving at less speed; and any speed is negligent if it endangers life or limb, because the driver cannot see ahead to avoid injury, though the vehicle of one injured is in plain view except as obstructed by darkness or a dust storm.    (8) While defendant was not bound to use the highest degree of care in passing along the road, it was his duty to use such reasonable care to avoid injuring others as, under the circumstances, a prudent man would exercise; and if it is found he did use such reasonable care to avoid injuring others, he should be acquitted. (9) In passing on the question of whether such reasonable care was used, the jury should take into consideration all the testimony as to the defendant's acts and conduct at the time of striking Horn, immediately before and afterwards. his knowledge of the highway, the kind of automobile he was driving, its condition, the time of day and condition of the weather, the speed at which he was driving, and all the other facts and circumstances in evidence bearing thereon.    (10) If defendant did not use reasonable care, he should be convicted, if such negligence was the proximate cause of the injury.    (11) Careless driving of an automobile and reckless indifference to the life and safety of oth-

ers, if shown by the evidence, may supply the criminal intent required. (12) If one by careless and reckless driving of an automobile unintentionally run over or strike another and inflict upon him a great bodily injury, such act will constitute assault with intent to do him a great bodily injury. (13) Intent is a state or condition of the mind, and is arrived at by inferences from acts and conduct. (14) The law presumes that one intends the result which ordinarily follows an act which he intentionally does, as every sane man is presumed to intend the natural and necessary consequences of a voluntary act.

We think there is little room for misunderstanding the effect of this charge. But we have the help of construction by the State. It is advanced by it that the conviction is rightful if "defendant was driving in such a reckless, imprudent manner as to be utterly indifferent to the safety of others whom he knew had a right to be upon the highway, and all the proof of intent necessary is furnished;" the question is whether he ought, as a careful, prudent man, operating an automobile under such conditions, to have lighted his lights so that he could have seen other persons upon the highway, and could himself have been observed by them. In other words, the conditions with respect to darkness, no matter how caused, should be taken into consideration in determining whether or not defendant was acting recklessly or carelessly in the operation of his machine upon the highway.

The argument for this argument is that it is a general rule that one intends the natural consequences of his act, and this warranted the jury, under the evidence, in finding "that the defendant, in operating his automobile, was acting in such a careless and negligent manner, and with such indifference as to the safety of others, as to be guilty of assault with intent to inflict great bodily injury upon the defendant," that it "is not necessary in such a case" that the de-

fendant forms or has the intent to inflict injury. That is to
say, while intent may be present, as that term is used in the
law, "the act may be accompanied or committed by such neg-
ligence or indifference to consequences as will be regarded in
law as equivalent to specifically formed intent."

We think the conclusion unavoidable that, in the opinion
of the trial court, the defendant might rightfully be con-
victed of an assault with intent to inflict a great bodily
injury upon Horn and otherwise maltreat him, if the jury
found that, without any intention to injure Horn, and (un-
der the evidence) without knowing that he was there to be
injured, he did injure him by means of reckless and negli-
gent driving—which negligence includes the failure to ob-
serve the statutes regulating proper driving of an automo-
bile. In other words, the court did not dispense with the
abstract rule that, on this indictment, a specific intent must
be proven, but holds that such intent might be found by the
jury from the fact that defendant injured Horn uninten-
tionally, but by the agency of being negligent and acting in
disregard of certain of the laws of the State.

### 2-b

We may assume, for the purposes of argument, that the
legislature could declare that, if an injury short of death
be inflicted through the reckless operation of an automo-
bile, or failure to carry a light, and the like, that, without
reference to intent, it shall constitute the crime of assault
with intent to inflict great bodily injury upon the one
who was injured. It has not yet so declared. We may so
assume that the legislature could enact a statute prescribing
a punishment greater than fixed for reckless driving, if
such injure one upon a highway. There is, as yet, no such
statute. If there were, the indictment is not based upon
it. The overshadowing questions, then, are: (a) Whether,
as the State claims, if the conduct shown by the evidence
"shows a recklessness on the part of defendant that would

justify a jury in finding that he was guilty of such careless-
ness and recklessness as to convict him of the crime with
which he was charged;" (b) whether a charge can be sus-
tained which was, in general tenor, that, from finding reck-
less operation and injury, the jury could find that defend-
ant intended the act charged in the indictment, when in
fact he had no such intent in his mind, had no animosity
towards the prosecutor, and did not even know he was
about to injure or had injured him; and (c)—as a corollary
—the still more vital question whether, under all the evi-
dence here, a finding that defendant had such specific in-
tent can be sustained.

Defendant is not being tried under a possible statute
which may be conceded to be valid, were it enacted. He is
not accused of having feloniously, willfully and unlawfully
injured Horn, but of having assaulted Horn with intent to
inflict upon him a great bodily injury, and otherwise to
maltreat him—an assault which the trial court correctly de-
fined to be one made with the intent to inflict a great bodily
injury upon the person assailed, of a more grave and serious
nature than an ordinary battery. And see *State v. Wyatt*,
76 Iowa 328; *State v. Shea*, 104 Iowa 724, at 725; *Irlbeck
v. Bierl*, 101 Iowa 240, at 242. We have been unable
to find a case wherein such an assault is held to have been
committed, except where defendant saw the one assaulted,
or knew he was present and engaged in the assault with de-
sire to injure seriously. *Haupt v. Swenson*, 125 Iowa 694,
is that, to constitute a criminal assault, there must be some
evidence of an attempt or endeavor to do violence to the
person. This is on the reasoning that, if the rule were oth-
erwise, mere violent and abusive language or threats, accom-
panied by violent gestures, would be an assault, whether
there was an apparent intention of carrying out the threats
or not. And see *State v. Malcolm*, 8 Iowa 413; and *Stephen
v. Myers*, 19 English Com. L. 414; *Morton v. Shoppee*, 3 C.

& P. 373 (14 Eng. Com. L. 355) ; *State v. Davis,* 1 Ired. L. (N. C.) 125—therein quoted with approval.

That no cases are found which hold that one who does not know at the time that there is anyone to hurt or who has been hurt, may be guilty of assaulting one in fact injured, with intent to maltreat him and inflict upon him a great bodily injury, is explained by the existence of a very large number of cases which require a specific intent to inflict an aggravated injury upon a specified person, and as many which define what constitutes specific intent. Undoubtedly, there are many cases wherein the sole inquiry is whether an act was willful. *State v. Porter,* 34 Iowa 131, at 140. There is no doubt that if, in such a case, willfulness is denied by the claim that the act was not intentionally done, the rule applies that sane persons are presumed to intend what will naturally result from what they knowingly do. Illustrations are: Where one who knows that a highway exists and places an obstruction across it, says he did not intend to violate the law (*State v. Teeters,* 97 Iowa 458, at 461) ; or where a judge of election refuses the vote of one who complies with the requisites of the law to prove qualification, and it is defended that the judge believed his refusal to be lawful (*State v. Clark,* 102 Iowa 685, 686). We may concede, as the State says, that, had Horn been killed under the circumstances here, defendant would have been guilty of manslaughter. All this leaves open whether the rule of natural consequences applies to cases where the State is bound to prove not merely the doing of an unlawful act which inflicted an injury, and that injury to someone might well result from the reckless conduct of defendant, but to prove that he had a specific intent to inflict an aggravated injury upon a named person. Of course, the indictment here is one which requires proof of the specific intent which is essential to the offense charged, and which is specifically charged.

Now, such an intent is an essential in murder in the first degree. Murder done in attempted robbery is of that degree. Yet we held, in *State v. Von Kutzleben*, 136 Iowa 89, at 97, that an averment that accused did willfully, etc., with intent and purpose of committing a robbery, loosen and displace the rails of a railroad for the purpose of wrecking a train, that a train was wrecked in consequence, and that a person named was fatally injured and died from his injury, does not charge murder in the first degree. In *State v. O'Donnell*, 176 Iowa 337, we point out that our decisions hold that a killing which is merely willful, is not murder in the first degree. The difference between assault, and assault with intent to inflict a great bodily injury, is the specific intent to inflict an aggravated injury. *State v. Malcolm*, 8 Iowa 413. Two of the cases cited by the State declare that it is as essential to prove the specific intent as the assault itself. *State v. Fox*, (Mo.) 37 S. W. 794; *Botsch v. State*, (Neb.) 61 N. W. 730. In Nebraska, the syllabus states the decision. It is that:

"An essential element of the crime of assault with intent to commit murder is the actual intent to take life, and, when an offense is constituted by statute of an act combined with a particular and specific intent, proof of the intent is just as indispensable as proof of the act."

Without such proof, defendant may be proven guilty of an offense, but he cannot be punished for the one charged. *State v. Fox*, supra. In the *O'Donnell* case, supra, we hold that the specific intent to kill must not be left to inference, and that the proof must tend to show a specific intention to take life, and that there must be "not only evidence of murder, but of additional elements which are as essential to convict of murder in the first degree as is evidence that any murder was done."

In *State v. Debolt*, 104 Iowa 105, 109, we declare that, in the case of malicious threats to accuse another of an of-

fense, with intent thereby to extort money or pecuniary advantage, the intent to extort is of the essence of the crime, and proof of the threats, though conclusive, is not proof of specific intent, or that it accompanied the act. To constitute the offense of cheating by false pretenses, there must have been an intent to defraud, in connection with a false representation calculated to mislead; it is an essential part of the offense. *Commonwealth v. Drew*, 19, Pick. (Mass.) 179; *Low v. Hall*, 47 N. Y. 104; *O'Connor v. State*, 30 Ala. 9; *Fay v. Commonwealth*, 28 Gratt. (Va.) 912; *Brown v. People*, 16 Hun (N. Y.) 535; *Anable v. Commonwealth*, 24 Gratt. (Va.) 563, 570; *Trogdon v. Commonwealth*, 31 Gratt. (Va.) 862, 872; 2 Bishop, Criminal Law (6th Ed.), Sec. 471; 2 Wharton, Criminal Law (8th Ed.), Sec. 1184; Desty, Am. Criminal Law, 588.

A fraudulent intent is not to be presumed from the fact that the pretenses were false, and the defendant knew them to be false. *Woodruff v. State*, (Ark.) 32 S. W. 102; *State v. Lynn*, (Del.) 51 Atl. 878; *People v. Baker*, 96 N. Y. 340; *Skiff v. People*, 2 Parker's Crim. Rep. (N. Y.) 139.

The cases relied on by the State do not sustain its theory that a specific intent to maltreat or inflict a great bodily injury upon another may be found to exist in one who does not see another who is injured, has in fact no intent to assault him, does not know he has been injured, but has injured through gross negligence. In *State v. Bennett*, 128 Iowa 713, the defendant assaulted, knew he was assaulting and intended to assault. It is merely held that an intent to murder may be inferred from this unlawful act and the other circumstances of the transaction. The real dispute was over whether intoxication should be considered on intent, the court instructing merely that it afforded no excuse or defense for the crime. The *Bennett* case cites the following two of our cases in support:

*State v. Jones*, 70 Iowa 505, is an indictment for hav-

ing disfigured another with specific intent to do so. The evidence warrants a finding that, in an altercation with one Hughes, defendant bit or tore off a portion of Hughes' nose. We sustained a charge that this intent might be proven by the circumstances, wherefore an instruction was held rightly rejected because it required the State to prove intent with evidence not required by the law. We hold that, if the assault was deliberate, and the disfigurement was reasonably to be apprehended as the natural and probable consequences of the act, with consideration of all the circumstances of the transaction, it was for the jury to determine whether the specific intent existed. *State v. Woodward*, 84 Iowa 172, holds that the intention need not be shown by direct proof, but may be inferred from what was done and said, and from all the acts and circumstances accompanying the alleged wrongful act. In the *Woodward* case, there was a fight between defendant and another, who was stabbed, which, it seems, was done after defendant had been slapped by the one stabbed.

In effect, these but establish that the specific intent may be proven by circumstantial evidence, and by legitimate inference from evidence. The trouble is not with this rule, but with applying it as the State would have us do. Everything may be proven by justified inference. In all cases, the natural and probable consequences of an act tend to show an intent to have these consequences happen. But in every case—and this we think the State overlooks—the finding of intent by inference must rest upon what is relevant to the ultimate question. If that be the existence of a specific intent, the inference must be based upon what is relevant to whether such intent exists. The proof that murder was done is, of itself, nothing upon which to deduce a specific intent to kill. The manner of the murder, the words spoken when it was perpetrated, and conduct immediately preceding, may justify such inference. The fact that

defendant has knocked prosecutor down with open hand will justify a finding that he intended to violate the law, but not that he acted with specific intent to inflict a great bodily injury. As said in *Commonwealth v. Jeffries*, (Mass.) 83 Am. Dec. 712, at 721, 722, the rule permitting the finding of ultimate facts by inference has no limit, except that "it cannot be extended to facts or circumstances which do not naturally or necessarily bear on the issue to be established, precisely as evidence of all collateral facts and circumstances must be confined to the proof of those which have a legitimate and direct connection with the principal transaction;" and the circumstances which can be made a basis must be "significant circumstances bearing on this intent."

If this be not the distinction, then there is no difference between a statute which does and one which does not require a specific intent. And yet a multitude of decisions which affirm that, "when a statute makes an act indictable, irrespective of guilty knowledge, then ignorance of the fact is no defense," and specific intent immaterial, are irresistibly suggestive of the counter-proposition that, when the criminal quality of the act depends upon a specific intent to do what is charged, there must be something which singles out such intent in the proof. On the theory of the State, the defendant stands precisely where he would if he had violated a statute making it a crime to injure another by reckless driving, or to cause injury by disobeying the laws regulating the proper operation of automobiles on the highway. In effect, the position of the court and of the State's counsel is that the statute upon which the indictment rests is not one which punishes for what is in fact an assault with intent to inflict a great bodily injury, but that the law construes it so that it may be read, "whosoever injures another by negligence, or by driving an automobile contrary to the regulations provided by law, is

guilty of an assault with intent to inflict a great bodily injury upon that other."

Of course, neither in this nor any other case may the defendant ask that his naked denial of an intent to injure, or injure greatly, be held conclusive against such intent. In a case analogous on principle, it was held that no mere pretense of indebtedness will suffice to make a shield against an obtaining by fraud and falsehood, out of a claim that there was no fraud because no more than just payment was worked. *Commonwealth v. McDuffy*, 126 Mass. 467. We are constrained to hold that, if every element upon which the instructions made a finding of specific intent depend, be established, it will not warrant a finding that such intent existed. It follows that it was error to give these instructions.

III.   If we assume it to be correct to

3. CRIMINAL LAW: elements of crime: specific intent as jury question. charge that the jury *may* find specific intent if they find certain negligences or disregard of the automobile operation laws, it is still error to charge that, upon finding these, they *must* find a specific intent to injure Horn.   Compulsion to find an ultimate fact if certain circumstances are found, differs manifestly from permission to find that ultimate fact upon finding those circumstances.   It was for the jury, and not the court, to determine whether, though defendant was reckless and negligent, and whether or not he violated the automobile laws, he was actuated by a specific intent to injure Horn, as the indictment charges.   *State v. Ledford,* 177 Iowa 528.

In *People v. Levison,* 16 Calif. 98, it is ruled that the court may not specify that certain things will constitute essential guilty knowledge in receiving stolen goods, because such knowledge is a question of fact.   In *Marshall v. State,* 49 Ala. 21, on the charge of selling liquor to a minor, an instruction that the fact of the minority of the person

to whom the liquor is sold is conclusive of the defendant's intent, is held to be erroneous. Whether an obtaining by false pretenses, knowing them to be false, was done with fraudulent intent, is for the jury. *State v. Debolt*, 104 Iowa 105, 109; *Woodruff v. State,* (Ark.) 32 S. W. 102; *State v. Lynn,* (Del.) 51 Atl. 878; *People v. Baker,* 96 N. Y. 340; *Skiff v. People,* 2 Parker's Crim. Rep. (N. Y.) 139 And see *State v. O'Donnell,* 176 Iowa 337.

The conviction cannot stand. This does not exclude a conviction for assault and battery, or assault.—*Reversed.*

GAYNOR, C. J., LADD, WEAVER and PRESTON, JJ., concur