THE STATE v. MOELCHEN.

1. **Criminal Law**: EVIDENCE: PREVIOUS OCCUPATION OF DEFENDANT. In a criminal trial it is not erroneous to permit the introduction of evidence as to the previous occupation of the defendant.

2. ——: ——: LEADING QUESTIONS. An abuse of discretion must be shown before the action of a trial court in permitting the asking of leading questions will be reviewed on appeal.

3. ——: ——: MURDER. It is competent to show that a previous quarrel had taken place between one deceased and a defendant charged with his murder, and the fact that the language used by the parties was not understood by the witness, who knew only a single word that was spoken by the defendant, would not render the testimony of such witness inadmissible as to what he saw, heard and understood.

4. ——: ——: STATEMENT OF DECEASED. The fact that the deceased had stated to a justice of the peace that the defendant threatened to kill him, and had desired defendant's arrest, was held competent to be shown, in connection with a subsequent conversation between the justice and the defendant, in which the former told the defendant of the complaint made by the deceased. ADAMS, CH. J., *dissenting*.

5. ——: INSTRUCTIONS. Instructions given upon the trial of one charged with murder considered and approved.

*Appeal from Dubuque District Court.*

THURSDAY, APRIL 8.

THE defendant was indicted, tried, convicted and sentenced for the murder of Jacob Odenthal, and he appeals to this court for a reversal of the judgment against him. The facts of the case appear in the opinion.

*McCeney & O'Donnell*, for appellant.

*J. F. McJunkin, Attorney General*, and *T. S. Wilson*, for the State.

ROTHROCK, J.—I. Jacob Odenthal was the uncle of the defendant. On the morning of the 2d of July, 1878, the dead body of Odenthal was found lying in a road about one mile

and a half from his residence. His horse, with a saddle on, was found some distance away. There were wounds upon his head sufficient to have produced instant death. His coat was buttoned, and the right arm was out of the sleeve. The right stirrup-strap had the appearance of having been cut from the saddle, and it, with the stirrup, was hanging upon the left foot of the deceased and wrapped about the heel. There was evidence tending to show that the body had been dragged some distance. There were shoe-tracks found near the body, and in the line where it appeared that the body had been dragged. The defendant is a young man and came to this country from Germany in January, 1878, at the invitation of Odenthal, to live with him. They lived alone in Odenthal's house, excepting that for a part of the time they had a housekeeper named Douglas. Odenthal owned a small farm and some personal property. In March previous to his death he made a conveyance of his farm to the defendant, and it was deposited with a third person to be delivered to the defendant at Odenthal's death.

It was claimed by the State upon the trial that defendant murdered the deceased in the house where they lived, and that upon the night before the body was found he placed it upon a horse and walked along side the horse through a gate and field, leaving the tracks of his shoes beside the horse's tracks, and that he thus walked and kept the body in position upon the horse, to near the place where it was found, and that he there left the body, the horse, saddle, etc., to create the impression that the deceased was killed accidentally, by falling from his horse, or otherwise.

The claim made by the defendant was that the deceased took his horse on the evening before his dead body was found, and rode away after dark, and that was the last he saw of him alive.

There are many other circumstances found in the evidence which bear upon the issue, such as the finding of an ax upon the premises stained with blood, and what appeared to be bloody spots upon the wall of a room in the house, and upon

certain clothing; the appearance of something having been dragged from the house, etc.; but we have given sufficient to enable the reader to understand the questions which we are required, upon an examination of the record, to determine.

· Andrew Bahl, a witness for the State, was one among the first persons who was present when the body of the deceased was found. He testified that certain shoe-tracks were found near the body, and in the line where there were indications that the body had been dragged; that the tracks had marks of coarse nails in them; that defendant had coarse nails on each side of his shoes. A short time after the body was found the defendant was arrested, and taken to where it lay. The witness proceeded with his testimony as follows: "I saw defendant's tracks made when brought by constable; was same track, in my opinion, as one made at body. Int. In appearance? Ans. In appearance made by the same shoe, whether it was made by the same person I can't tell."

This testimony was objected to because it was the opinion of the witness upon a question in which such opinion was not admissible. The witness may have been unfortunate in the use of the word "opinion." But taking what follows it is clear that he intended, in all that he said upon the subject, to say just what he did say in answer to the interrogatory, that in appearance the tracks were made by the same shoe. He evidently intended to say that in his judgment the tracks appeared to have been alike, or made by the same shoe. It is always allowable for a witness to describe the appearance of an object or thing when material, as that a person appeared excited, or amused, or intoxicated or the like, and yet in a certain sense this is an opinion. But it is not an opinion so distinct from a fact as to be inadmissible.

II.  The same witness was asked this question: "Do you know what had been defendant's business previous to coming here?" The answer was, "defendant told me he had been acting as agent, and was in the last Franco-Prussian war, a soldier."

1. CRIMINAL LAW : evidence : previous occupation of defendant.

Objection was made to this evidence upon the ground that it was immaterial. It is claimed in argument that the object of the prosecution was to show that the defendant was trained to scenes of blood and carnage, and to argue to the jury that he was thus prepared to take the life of his uncle, and that such argument was made. It would not have been error if the court had excluded this evidence, and yet in all trials of this character it is not unusual to inquire as to the previous occupation of the defendant, and we cannot say that it is erroneous. That he was a soldier of his country was certainly not to his discredit, and would not tend to show that he was guilty of the crime charged. The record does not show that an appeal was made to the jury against defendant on account of his previous occupation. If such was the fact, the court no doubt interfered, and put a stop to it as conduct not only highly unprofessional, but as an unnecessary waste of the time of the court and jury.

III. A number of objections were made to interrogatories propounded by the prosecution to witnesses because they were 2. —— : —— : leading. This question was asked one of the witnesses. "State to the jury whether you could notice distinctly or otherwise the nails in tracks, the points of the nails? Ans. Yes."

*leading questions.*

This question was not objectionable. The witness had testified that there "was nails printed into the mud around the outside of the soles." Taken in connection with what preceded the question, it was not leading, it merely asked whether the impression of the tracks were " distinct or otherwise." We have examined the other objections made to leading questions, and, without setting them out in detail, will say that we find nothing therein which seems to us to be prejudicial to the defendant, nor an abuse of the discretion of the court. The permission to ask leading questions is a matter resting in the sound discretion of the court, which cannot be urged as error unless it be shown that there was

an abuse of such discretion.  *State v. Bodekee*, 34 Iowa, 520. 1 Greenleaf on Evidence, section 435.

Objections were made to the refusal of the court to allow the defendant to prove his statements and declarations made at the place where the body was found, and to allowing him to show that the tracks found in the field, in connection with the tracks of a horse, were found by reason of information given by defendant.  The reason for the exclusion of this evidence is apparent.  They were declarations of defendant in his own behalf, and were not admissible unless they were a part of a conversation drawn out by the State.  It does not appear that they were.

The woman, Douglas, the housekeeper of the parties, testified to an altercation between the deceased and the defendant

3. ⸺ : ⸺ ; at which time blows were struck, and the parties murder. quarreled in the German language.  The witness did not understand the language, and was able to interpret but one word which the parties used and that was the word "knife" used by the defendant.  The evidence was objected to, and the objection overruled.  The ruling was correct.  The evidence was competent because it tended to show that the parties had not lived together agreeably, and because the witness was able to interpret but one word ought not to exclude the testimony as to what she saw, heard, and understood.

V.  Andrew Bahl, a witness for the State, testified that he was a justice of the peace, and that on one occasion the de-

4. ⸺ : ⸺ ; ceased in an interview with him complained that statements of deceased. the defendant had threatened to kill him, and desired to have him arrested, and that on the next day he (witness) saw the defendant, and told him of the complaint made by the deceased, and advised him to do as the old man wanted him to, and live peaceably, etc.  This evidence was objected to as being the declaration of the deceased, not made in the presence of the defendant.

Perhaps the statements made by the deceased to the witness, without more, would have been objectionable; but that

question we need not determine. If the district attorney in examining the witness had first directed his attention to the conversation between the witness and the defendant, this conversation would have been, without doubt, competent evidence. It consisted mainly of a repetition by the witness of the complaint made by the deceased on the day previous, and the defendant's reply thereto, to the witness. Now, if after detailing that conversation the witness had been asked whether it was true in fact that the deceased had stated to him what he repeated to the defendant, we think it would have been, to say the least, no prejudice to any one to allow him to answer the question. Indeed the jury, without such answer, could have understood the witness in no other way than that in repeating the conversation to the defendant he claimed to have repeated it truthfully. This in substance was all that was testified to by the witness, but in the reverse order from that in which it is above set out. To permit this was at most but a mere irregularity in the order in which the evidence was introduced, and could not have been prejudicial to the defendant.

A large number of other questions are made upon the admission and exclusion of evidence. We have discussed those which seem to us to demand special mention, and have examined with care all the others, and conclude that no right of the defendant was prejudiced by the admission or exclusion of any of the evidence. We cannot take the time nor space to demonstrate the correctness of our conclusion, and must pass to a consideration of what are claimed to be errors in the instructions given by the court to the jury.

VI. The instructions cover some twenty-five pages, and are elaborate in explanation of the different degrees of criminal homicide, and the nature, force and effect of circumstantial evidence. Objection is made to the third instruction because it directs the jury in effect that circumstantial evidence is better and more valuable than direct evidence. This instruction covers some six or seven

5. ———: instructions.

pages, and cannot be incorporated in this opinion without greatly extending its length. The language specially objected to is this: " Strong circumstantial evidence in cases of crime is often the most satisfactory of any from which to draw the conclusion of guilt." This is followed with the reason which is found in all the books upon evidence, that witnesses who testify to a direct fact may be guilty of perjury, and that, to use a trite expression, " circumstances will not lie." In short, we may say of this instruction that it is not objectionable, and that it is in accord with the views of the ablest writers upon the subject.

VII. The defendant was examined as a witness in his own behalf, and the fourth instruction is as follows: " In criminal cases the law allows a defendant to testify; his evidence, however, is to be taken into consideration by you in connection with the fact that he is the defendant, and charged with the crime, and while for that reason alone you are not to disregard it, yet the fact that he is testifying in his own behalf should be considered by you, and with that and the statement of the defendant as compared with the other evidence." We confess to our inability to understand the closing part of this instruction; but taking it all together it amounts to no more than saying to the jury that the fact that the defendant was a party was proper to be taken into consideration by them as affecting his credibility as a witness; this was proper. " Facts which have heretofore caused the exclusion of testimony may still be shown for the purpose of lessening its credibility." Code, § 3637.

VIII. The court directed the jury that they might take into consideration all of the acts and conduct of the defendant as to his concealment or non-concealment of the crime, or of his not making known or making known the absence of the deceased, and that if the defendant had given unreasonable and contradictory statements in regard to the case they are to be considered in determining the case. It is urged that these instructions were not warranted by any evidence in

the case because no concealment was shown, and no contradictory statements were made by the defendant. It will be observed that the instructions do not assume that such was the fact, but leave the jury to determine the question for themselves. The rule of the instructions is undoubtedly correct, and if there was no concealment and no contradictory statements, but his acts and conduct were consistent and reasonable throughout, the instructions were rather favorable to the defendant than against him.

IX. In the fifteenth instruction it is said that "the use of a deadly weapon and several fractures on different portions of the skull produced by blows, these if shown by the evidence would be *prima facie* evidence that the defendant intended it." This is objected to because it assumes that the defendant inflicted the blows; it is not vulnerable to that objection; it is but a single sentence taken from an instruction of two pages. The instruction gives the rule as to the consequences of an act done, as that a person who does an act willfully necessarily intends the natural and probable consequences thereof, and that if the jury find from the evidence that the defendant with an ax, or with some other deadly weapon, inflicted upon the head of Odenthal wounds of which he died, and the use of a deadly weapon and several fractures there, if shown, would be *prima facie* evidence that the "defendant intended it," that is, intended the consequences of his acts.

X. At the conclusion of the sixteenth instruction it is said that "if the defendant killed the deceased in a fight suddenly and without premeditation or malice it would be manslaughter, but the fact reducing it to manslaughter, as done in a fight, must appear in the evidence, and cannot be presumed by the jury in the absence of any evidence showing it." It is argued that this clause of the instruction is erroneous, because the jury was thereby led to believe that it required direct, pointed and a higher kind of evidence to reduce the crime to manslaughter than to murder in the second degree.

But this instruction must be considered in view of the previous instructions, which fully defined the distinction between murder in the first degree, murder in the second degree, and manslaughter.    Taken into consideration with the whole charge, we believe that part of this instruction excepted to was not only not misleading, but it stated a correct proposition of law.

We have examined the whole record with care, and find no prejudicial error in it.    Indeed, it is seldom that an important cause is presented to us which is as free from irregularity, not to say error, as we find this to be.    It is a case of circumstantial evidence it is true, but we believe the proven circumstances point to the defendant as being guilty of the crime charged with that certainty and conclusiveness which leave no reasonable doubt upon the mind.                              AFFIRMED.

ADAMS, CH. J., *dissenting.*    I think that Bahl should not have been allowed to testify as to the complaint made to him by the deceased that the defendant had threatened to kill him.