## THE STATE v. COLE.

**1. Criminal Law:** MURDER: EVIDENCE OF OTHER VICIOUS CONDUCT TO-
WARDS DECEASED. Upon a trial for murder, where there is evidence
that would justify a jury in believing that the crime has been committed
by some one, and there are circumstances which point toward the de-
fendant as the guilty person, evidence of conduct exhibiting a bad state
of feeling on the part of defendant toward the deceased is admissible. (See
*State v. Moelchen*, 53 Iowa, 310.)

**2. Criminal Evidence:** EXPERTS IN TOXICOLOGY: COMPETENCY OF
PHYSICIANS AS SUCH: PRACTICE IN TRIAL AND APPELLATE COURTS.
Whether a physician, by virtue of his profession and experience as such
merely, should be allowed to testify as an expert as to indications of ar-
senic in the stomach of one supposed to have been poisoned, *quaere*;
but such professional experience must be regarded as at least *some* evi-
dence of the witness' qualification to testify. And, while the matter of
passing upon expert qualifications is not one that is subject to very well-
defined rules, and something must be left to the discretion of the trial
court,—to be exercised with caution in cases of gravity,—and while the
appellate court will, in such cases, when satisfied that injustice has been
done through a want of caution in this respect by the trial court, feel
justified in reversing the judgment of conviction, yet where, as in this
case, the defendant made no objection on the trial to the sufficiency of the
evidence of the qualifications of the expert witnseses, the trial court was
justified in presuming that he was satisfied with the evidence, and, no
manifest injustice appearing, a reversal on this ground is refused.

**3. Criminal Procedure:** INSTRUCTION AS TO LOWER GRADES OF OF-
FENSE: NOT ALWAYS NECESSARY. While it is not for the court to weigh
the evidence, the question whether there is *any* evidence is always one
for the court; and where defendant was on trial for murder by poisoning,
which by statute is made murder in the first degree, and there was no evi-
dence upon which defendant could have been found guilty of any infer-
ior offense, *held* that the court was not required to instruct as to lower
degrees of the crime, and that it would not have been justified in so do-
ing. (See opinion for cases cited, followed and distinguished.)

**4. Criminal Law:** QUALIFICATIONS OF EXPERTS: PROVINCE OF COURT AND
JURY. It is for the court in the first instance to pass upon the qualifica-
tions of a witness offered as an expert to testify as such, but, when he has
once been permitted to testify, the jury are the sole judges of the weight
of his testimony, and they may consider, among other things, the extent
of the witness' knowledge as to the special thing in regard to which he
testifies as an expert, and, in a proper case, they may be justified in dis-
regarding his testimony entirely.

5. ——: JUDGMENT: IMPRISONMENT FOR LIFE INCLUDES HARD LABOR. Where the verdict was imprisonment *at hard labor* for life, a judgment of imprisonment for life must under the law be presumed to mean the same thing; and an objection by the defendant that the judgment does not follow the verdict cannot be sustained.

### *Appeal from Clarke District Court.*

.TUESDAY, OCTOBER 16. 1883.

THE defendant was indicted for the crime of murder by means of poison. Having been convicted, he was sentenced to confinement in the penitentiary for life. From this judgment he appeals.

*P. J. Goss*, and *Temple & Tallman*, for appellant.

*Smith McPherson*, *Attorney-general*, for the State.

ADAMS, J.—The defendant was charged with the murder of his wife. In April, 1880, the deceased, Laura Cole, became confined in childbirth. While thus confined, she manifested symptoms of having been poisoned. She survived the birth of her child a few days and died. Soon after the burial the suspicion that she was poisoned became so strong that the coroner caused the body to be exhumed and a *post mortem* examination to be made. The examination, as the evidence tends to show, revealed arsenic in the stomach. The defendant was suspected of having administered the poison, and was indicted and tried, with the result above stated.

I.　The deceased was but little more than fifteen years of age at the time of her marriage to the defendant, and only

1. CRIMINAL law: murder: evidence of other vicious conduct towards the deceased.

about seventeen years of age at the time of her death. The state introduced evidence tending to show that the defendant lost his affection for her, and had threatened to send her home to her father's house. Some of the evidence introduced for the purpose of showing his want of affection, and his criminal disposition toward her, was objected to by the defendant. The state was allowed, against the objection of defendant, to in-

troduce evidence to the effect that the defendant called her a ".d——d big footed squaw;" that he allowed her to work out of doors in cold weather, in clothing insufficient, while he was warmly clad; that he made her get into a pen and milk a vicious cow; that when she was dying, and he was told by the attending physician that she could not live more than fifteen or twenty minutes, he commenced talking about his orchard and improving his house, and put on a jovial and frivolous air. The ruling of the court in admitting this evidence is assigned as error. It may be conceded, as the defendant claims, that upon a trial for a criminal offense evidence of independent acts of bad conduct is not ordinarily admissible, and in no case to establish the body of the crime. But upon a trial for murder, where there is evidence that would justify a jury in believing that the crime has been committed by some one, and there are circumstances which point to the defendant as the guilty person, evidence of conduct exhibiting a bad state of feeling on the part of the defendant toward the deceased is admissible. *State v. Moelchen*, 53 Iowa, 310; *State v. Watkins*, 9 Conn., 47. In the latter case the defendant was tried for the murder of his wife. It was held admissible to show that defendant had been guilty of adultery. The affection which a husband ordinarily entertains for his wife renders it improbable to the last degree that he would be guilty of murdering her. But this affection is sometimes wanting, and, where it is wholly so, the marital relation may be a burden. In *State v. Watkins*, HOSMER, Ch. J., speaking of the evidence of adultery, said: "The proof alluded to would not establish the position, if the wife were killed, that the husband perpetrated the act; but the presumption (of innocence) created by the marital relation would be repelled, and a weight be given to the other proof in the case which it would not otherwise possess." See, also, in this connection, *State v. Zellers*, 2 Halstead, 220; *Hendrickson v. People*, 1 Parker's Crim. Rep., 406; *Benedict v. State*, 14 Wis., 425. We think that the court did not err in admitting the evidence.

II. One Abernathy was allowed to testify, against the objection of the defendant, that he had seen the deceased carrying water. It is not shown for what purpose nor under what circumstances. The defendant was living upon a farm and keeping house. It is to be presumed that the deceased was carrying water from the usual place of supply for domestic purposes. We are not able to say that this was anything more than an ordinary household duty which the defendant might properly enough, under ordinary circumstances, allow his wife to perform. Such being our view, we have to say that it appears to us that the evidence was immaterial. But we are not able to see how it could have prejudiced the defendant.

III. The defendant assigns as error that the court erred in allowing certain physicians to testify, as experts, to having made a *post mortem* examination, and to having found indications of arsenic in the stomach of the deceased. The objection urged in argument is that it did not appear that they were competent to testify as experts. Without any doubt, the question as to the condition of the stomach was one involving skill and science. The physicians who testified were shown merely to be physicians of considerable length of standing in practice. Whether such persons should have been held to be qualified to testify as experts in respect to the *post mortem* examination, and indications of arsenic, is a question upon which we are not entirely agreed. The *post mortem* examination of a human stomach for the detection of indications of poison does not necessarily come within the experience of a medical practitioner. But toxicology is treated as a branch of medical jurisprudence, and it may be regarded as belonging to medical science. On a question, then, as to whether a person is qualified to make a *post mortem* examination of a human stomach, and testify to indications of arsenic, it would oe proper to allow evidence that he is a medical practitioner. We do not say that the court, upon such fact

2. CRIMINAL evidence : experts in toxicology: competency of physicians as such: practice in trial and appellate courts.

The State v. Cole.

alone being shown, should necessarily allow him to testify. We merely say that, if he is admitted upon such fact, the court does not act wholly without evidence. This matter of passing upon expert qualifications is not one that is subject to very well defined rules. There must, of course, be some evidence of the existence of the qualifications; but beyond that it must be left somewhat in the discretion of the court. In a criminal case of the gravity of this one, the discretion must, to be sure, be exercised cautiously; and if the appellate court should be satisfied that it had not been done, and should apprehend that the defendant had suffered injustice, it would doubtless be justified in reversing. But, in passing upon the question of a proper exercise of discretion the appellate court may look into what transpired upon the trial. Where the defendant thinks that the evidence is insufficient to establish with proper fullness the expert qualifications, his true course would be to interpose an objection upon that ground. Upon the preliminary question of the admission of offered expert witnesses, it is probable that their qualifications are seldom shown as fully as they might be. The witnesses, we think, are often admitted upon very slight evidence, leaving the party against whom they are admitted to show by cross-examination and otherwise the absence of the qualifications. It is not regarded as easy for an unqualified person to sustain himself in the character of an expert witness. If a party against whom an expert witness is offered makes no objections to the sufficiency of the evidence of his qualifications, the court would ordinarily, we think, be justified in assuming that the party regarded the witness as qualified, or relied upon showing his want of qualifications later. In the case at bar, no objection was interposed on the ground of a want of qualifications of the physicians. There was, it is true, an objection made to the competency of the evidence respecting the *post mortem* examination and its revelations. But that is a different thing. Evidence may be competent, abstractly considered, and a witness whose testimony is offered as such evi-

dence not be qualified. The question now presented in argument does not appear to have been raised upon the trial. While appellate courts sometimes go very far in a case of this kind in reviewing the proceedings in the trial court, where manifest justice seems to require it, we have to say that we do not see anything in the alleged error that would justify us in reversing.

IV. The court gave an instruction in these words: "The indictment in this case charges the defendant with the crime of murder in the first degree, and while, under the law in such cases, the facts justifying it, a defendant may be found guilty of an offense necessarily included therein, still, under the evidence and conceded facts in this case, the offense, if one was committed at all, was murder in the first degree. The defendant also claims by his counsel, in argument before you, that, under the evidence in this case, the defendant is either guilty of murder in the first degree or not guilty. It will, therefore, only be necessary to call your attention to the law relating to murder in the first degree." The giving of this instruction is assigned as error. The first objection urged to this instruction is that the court erred in assuming that there were conceded facts, whereas it is insisted that there were and could be none under the plea of not guilty.

3. CRIMINAL proceedure: instruction as to lower grades of offense: not always necessary.

The defendant was indicted for the murder of his wife. One of the facts necessary for the state to prove, and which the state did prove, was, that the defendant's wife was dead. But that fact was virtually conceded. The defendant's witnesses testified upon that assumption, and no question was raised in regard to it.

The second objection urged is, that it is not true that the defendant was necessarily guilty of murder in the first degree, if he was guilty at all. It is not claimed that the defendant under this indictment could have been guilty of murder in the second degree. Murder committed by means poison is made by statute murder in the first degree. Code, § 3849. But the defendant insists that he might under the

indictment have been convicted of something less than murder, as manslaughter, if, for instance, he was guilty merely of criminal negligence in administering poison which produced death; or of an assault with intent to commit murder, if he administered the poison with such intent, and the death resulted from a different cause. To this we have to say that we have been unable to discover the slightest evidence that poison was administered by defendant through negligence, or that the death occurred from any other cause. The evidence, so far as it bears upon these two points, is all against the defendant.

It is true, it is not for the court, as the defendant insists, to weigh evidence. That was solely the province of the jury. But no rule is better settled than that an instruction should not be given upon a theory to which the evidence affords no support whatever. The question as to whether there is any evidence upon a given point is always a question for the court.

The defendant insists, however, that this court has held unqualifiedly that the trial court must instruct in regard to the lower degrees of crime necessarily included in the crime charged in the indictment. He cites *Gorden v. State*, 3 Iowa, 410; *State v. Walters*, 45 Id., 389; *State v. Vinsant*, 49 Id., 241; *State v. Clemons*, 51 Id., 274; *State v. Glynden*, Id., 463; *State v. Pennell*, 56 Id., 29; *State v. Porter*, 57 Id., 691. But an examination of these cases will disclose that in some of them the point in question was not raised, and that, where it was raised, it was held that an instruction in regard to the lower degrees of crime would not have been wholly without support in the evidence.

That it is not error to omit to instruct in regard to a degree of crime of which the jury under the evidence could not have found the defendant guilty, was held in *Foster v. The People*, 50 N. Y., 598. We think the instruction given is correct.

V. The court gave an instruction in these words: "While it is true that medical experts are allowed under the law to testify in cases of this kind, and the court has allowed it to be done in this case, yet it is equally true that you are the

**4. CRIMINAL law: qualifications of experts: province of court and jury.** judges of the weight to be given to such testimony, taking into consideration the knowledge of said witnesses, or the want of it, the disagreement of experts, if any, and also the further fact whether they or any of them are practical chemists, or whether they or any of them have little or great knowledge of chemistry." The giving of this instruction is assigned as error. The objection urged, as we understand it, is that the instruction submitted to the jury, not simply the question as to the weight of the expert testimony, but the question as to the competency of the witnesses to testify as experts at all, which latter question, it is said, was solely for the court. It may be conceded that, when a witness is offered as an expert, the court would not be justified in allowing him to testify against the objection of the party against whom he was offered, until some evidence was introduced that the witness was possessed of the requisite character. Where, however, as in this case, the witness has once been admitted by the court to testify, the weight that should be given to his testimony becomes a question for the jury, and in a proper case they would be justified, doubtless, in disregarding his testimony entirely. We see nothing in the instruction given of which the defendant can properly complain.

VI. The jury found by their verdict that the defendant should be punished by imprisonment in the penitentiary at **5. ———: judgment imprisonment for life includes hard labor.** hard labor for life. In rendering judgment upon the verdict, the court sentenced the defendant to imprisonment in the penitentiary for life. The defendant insists that the judgment did not follow the verdict, inasmuch as he was sentenced to hard labor. He could not under the verdict be punished otherwise than by hard labor in the penitentiary. We think that, under the law, the judgment must be presumed to mean that. A large number of questions were raised in the course of the trial, which we have examined, and we have to say that we see no error, and think that the judgment must be

AFFIRMED.