**STATE of Iowa, Appellee,**

v.

**Francis Vern KELLOGG, Appellant.**

No. 59659.

Supreme Court of Iowa.

March 22, 1978.

Humphreys & Associates, by Lloyd E. Humphreys and Brian L. Gruhn, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen., and David H. Correll, Black Hawk County Atty., for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This appeal involves several problems which arose in a prosecution on a murder indictment.

The crucial fact question at trial was whether defendant Francis Vern Kellogg shot his wife, Constance Kellogg, or whether she committed suicide. by shooting herself. On the evening of August 22, 1975, defendant and his wife were in their home in Waterloo, Iowa. They both frequently drank and quarreled. On this occasion they were in their bedroom quarreling. The State adduced evidence of circumstances from which the jury could find that defendant shot Mrs. Kellogg. On the other hand, defendant, the only eyewitness, made statements following the occurrence and testified at trial that Mrs. Kellogg said she was going to shoot herself and did so; he never

deviated from that version of the occurrence. Mrs. Kellogg died at a hospital from the gunshot wound soon after the bedroom occurrence.

Defendant went to the hospital with officers after the occurrence and thence to the station house. At the latter place, after *Miranda* warnings, defendant gave his suicide version of the occurrence, orally, in writing, and on tape.

The officers booked defendant, and someone later contacted an attorney, Mr. Frederick G. White, who conferred with defendant. Mr. White left and contacted Attorney James C. Dunbar, who came to the jail and conferred with defendant. Mr. Dunbar as a retained attorney represented defendant in district court in proceedings before, during, and after trial. Following the verdict, however, Attorney Lloyd E. Humphreys also represented defendant in district court and prepared a motion for new trial. Mr. Humphreys and his associate, Attorney Brian L. Gruhn, represent defendant in this appeal.

In the district court proceedings, a grand jury indicted defendant for murder, defendant stood trial, the trial court after hearing the evidence removed first-degree murder from the case, and the trial jury found defendant guilty of second-degree murder. After the trial court overruled defendant's motion for new trial and passed sentence, defendant appealed. In this court he urges several contentions.

■ I. *Johnson Testimony.* Officers went first with defendant to the hospital where Mrs. Kellogg was. The officers became suspicious that the case involved more than suicide and informed defendant of his rights under *Miranda.* Subsequently, at the police station, defendant read and signed a waiver form. Officer Lawrence Johnson then interrogated defendant, who related his version of the occurrence as suicide. Over defendant's objections of self-incrimination and absence of counsel at the interrogation, the trial court admitted into evidence Johnson's testimony regarding defendant's statements. Defendant challenges the ruling as error.

Since the situation involves a fundamental constitutional safeguard, we independently review the totality of the circumstances, *State v. Snethen,* 245 N.W.2d 308 (Iowa), to determine whether defendant's waiver and statements were knowing, intelligent, and voluntary. *State v. Walton,* 247 N.W.2d 736 (Iowa). The question under this record is factual.

While some pieces of evidence point in the opposite direction—such as defendant's prior drinking and the locale of the interrogation, in the station—and while defendant presses this evidence forcefully to our attention, we are convinced from our examination of the totality of the circumstances, including the State's evidence, that defendant knowingly, intelligently, and voluntarily made the waiver and the statements. Nothing will be gained by setting out the evidence at length, as the case does not present new legal principles at this point. As did the trial court, we arrive at the conclusion that the Johnson testimony is admissible. We thus reject defendant's contention to the contrary.

■ II. *Kehoe Testimony.* Following Mrs. Kellogg's death, the police arrested defendant, booked him, and placed him in jail. The following morning Mr. White came to the jail and talked with defendant. Mr. White then left and contacted Mr. Dunbar. A decision was reached that Mr. Dunbar would represent defendant. Charges had not yet been filed.

Before Mr. Dunbar came to the jail, defendant asked the jailer to see a detective. Accordingly detective Donald Kehoe talked with defendant, orally telling him his rights and asking him whether he understood them. Defendant stated he understood his rights and had signed a waiver.

Kehoe asked defendant what he wanted and defendant stated he desired to get out of jail to make arrangements for Mrs. Kellogg's funeral. Kehoe stated no bond had been set and he had no control over getting defendant out.

Kehoe asked defendant about the events of the previous evening, and defendant repeated his version of the occurrence as suicide. Kehoe's report of the incident concludes: "Just before the interview was ended, did receive a call from the Front Counter that Attorney Dunbar was out front wanting to talk to Kellogg. Informed the Front Desk Officer to have Dunbar have a seat and he could talk with his client shortly. Also, during the interview with Kellogg, received a call from Attorney White stating that he wasn't going to handle the case and that he, White, had talked to Dunbar about representing Kellogg. After completing the interview with Kellogg, did take him to the small interview room where he and Dunbar talked. After their conversation, Kellogg was returned to the jail at or about noontime."

The State questioned Kehoe as a witness at trial about his conversation with defendant. Over defendant's objection, the trial court admitted Kehoe's testimony.

Defendant insists that this testimony is inadmissible, as Kehoe deprived defendant of his constitutional right to counsel. Defendant leans heavily on *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424, reh. den. 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240. See also *Moore v. Illinois,* 98 S.Ct. 458, 54 L.Ed. 2d 424 (U.S.).

We find no necessity to say whether an *Escobedo* violation occurred. The night before the Kehoe interview defendant gave his version of the death as suicide, at trial in his testimony his version was suicide, and to Kehoe his version was suicide. We find no ground for reversal at this point. *Sweeney v. United States,* 408 F.2d 121 (9 Cir.); *State v. Moore,* 27 Ariz.App. 275, 554 P.2d 642; *Fletcher v. State,* 352 N.E.2d 517 (Ind. App.); *People v. Talamo,* 58 A.D.2d 946, 397 N.Y.S.2d 197; *State v. Siler,* 292 N.C. 543, 234 S.E.2d 733; *State v. Cradle,* 281 N.C. 198, 188 S.E.2d 296; *Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209; *State v. Boggs,* 16 Wash.App. 682, 559 P.2d 11.

III. *Branstetter Testimony.* Branstetter's testimony involves a question of relevancy. We have said, "Questions of the

relevance and materiality of evidence rest largely within the sound discretion of the trial court." *State v. Clark,* 187 N.W.2d 717, 720 (Iowa).

■ To prove murder, one of the elements the State had to establish was malice aforethought. Code 1975, § 690.1. Since this element constitutes a state of mind, the prosecutor in murder cases may show prior relations between the parties including incidents of quarrels and physical acts, as bearing on the defendant's quo animo. This rule is firmly established in our law. *State v. Moelchen,* 53 Iowa 310, 314, 5 N.W. 186, 189 (prior altercation at which blows were struck—"The evidence was competent, because it tended to show that the parties had not lived together agreeably"); *State v. Cole,* 63 Iowa 695, 697, 17 N.W. 183, 184 ("evidence of conduct exhibiting a bad state of feeling on the part of the defendant towards the deceased is admissible"); *State v. O'Donnell,* 176 Iowa 337, 157 N.W. 870; *State v. Flory,* 198 Iowa 75, 199 N.W. 303; *State v. Johnston,* 221 Iowa 933, 267 N.W. 698. See also, 40 Am.Jur.2d, Homicide § 274 at 540–541 (quarrels, altercations, and hostile acts); 40 C.J.S., Homicide § 241 at 1176.

■ As tending to show defendant's prior relations with his wife, the State introduced testimony by defendant's cousin, Jo Ann Hoffman, and by Mrs. Kellogg's mother, Louise Hicks, that defendant and Mrs. Kellogg had a stormy marriage. The marital trouble was of a continuing nature. Numerous arguments and quarrels occurred and indeed defendant and Mrs. Kellogg were arguing on the evening in question. In addition, over defendant's objection the State introduced testimony by Gerald L. Branstetter that about six weeks prior to Mrs. Kellogg's death defendant and Mrs. Kellogg had a heated argument and "he hauled off and slapped her." Continuing:

Q. All right. And immediately after striking the defendant—excuse me, the victim, with the open hand, what did the defendant next do? A. Well, they was in a heated argument and he doubled up his hand and he said he would knock her down.

Q. And can you demonstrate for the jury please what the defendant did on that occasion? Can you show us? A. Just pulled his hand back like this and said, "I'll—" like that. I don't remember the exact words, or anything like that. And I stood up and I took hold of Bud's [defendant's] arm and I said, "Bud, come on, sit down, let's have a drink and we'll go down to the Jet."

Testimony of this nature was admissible under the rule we have set out. Under the cases we have cited the relevancy issue was largely for the trial court. In a recent case we upheld the discretion of a trial court in admitting evidence running back about a year, relating to the defendant's feeling toward the decedent and the nature of their relationship. *State v. Peterson,* 219 N.W.2d 665 (Iowa) (letters).

We find no abuse of discretion here in admitting Branstetter's testimony.

IV. *New-Trial Motion.* The main thrust of defendant's motion for new trial was that the verdict lacked evidentiary support; the other grounds dealt with issues which we consider in other parts of this opinion.

■ As to evidentiary support, the principal contested issue was whether defendant shot his wife or she shot herself. That one or the other shot her, that she died as a result, and that defendant was in the room with her at the time she was shot, no one questions.

The State relied on circumstantial evidence. Among the circumstances were defendant's bad feeling toward his wife, the quarrel in progress at the very time of the shooting, some physical evidence of violence in the bedroom, Mrs. Kellogg's happiness on the day in question in looking forward to a wedding the following day, the complete and strange absence of finger or hand prints on the grip of the gun although the grip was conducive to retention of prints and prints appeared elsewhere on the gun (including defendant's prints), and the entry of the bullet below Mrs. Kellogg's left ear although she was right-handed.

The trial court eliminated the charge of first-degree murder for want of substantial proof of willful, deliberate, and premeditated killing. We are satisfied that the trial court properly submitted second-degree murder. *State v. Smith,* 242 N.W.2d 320 (Iowa); *State v. Schatterman,* 171 N.W.2d 890 (Iowa); *State v. DeRaad,* 164 N.W.2d 108 (Iowa); *State v. McCollom,* 260 Iowa 977, 151 N.W.2d 519. The court properly overruled the motion for new trial.

V. *Competency of Counsel.* Defendant relies principally in the appeal on his contention that he was prejudiced by ineffective assistance of counsel in district court. U.S.Const. Amends. VI and XIV, § 1; Iowa Const. Art. I, § 10. This contention involves three issues.

■ (a) The State's first line of defense to this contention is that defendant did not raise the point in the trial court. Situations may arise, however, in which an ineffective attorney—and we use "ineffective" at this point without in any way prejudging Mr. Dunbar's performance in the case—may represent an accused throughout the trial court proceedings so that, in the nature of things, incompetency is not raised until appeal—if the accused then has other counsel.

That chronology is not quite what happened here, but close. Mr. Dunbar alone represented defendant before and during trial, through verdict. With Mr. Humphreys, one of defendant's present appellate attorneys, Mr. Dunbar represented defendant in the proceedings on the motion for new trial. At that time the reporter's transcript of the trial was not yet available. Mr. Humphreys asserts, and we do not question his veracity, that the alleged incompetency did not dawn on him until he heard the prosecutor's remarks at the new trial hearing about the pre-trial and in-trial proceedings and until he thereafter received and examined the transcript.

We believe this unusual situation justifies relaxation of the general rule that a party must raise his point in the trial court. Defendant, a painter by trade, does not appear from the record to possess sufficient sophistication in legal matters, and the ineffec-

tiveness of counsel does not appear to be so blatant, that we can foreclose defendant from appealing on the ground that he personally should have raised the incompetency charge before the trial court. The following decisions furnish some support for our position. *United States v. McCord,* 166 U.S. App.D.C. 1, 509 F.2d 334, cert. den. 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87; *United States v. Sullivan,* 435 F.2d 650 (9 Cir.), cert. den. 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654; *United States v. Johnson,* 434 F.2d 827 (9 Cir.); *United States v. Goodwin,* 405 F.2d 178 (4 Cir.), cert. den. 395 U.S. 967, 89 S.Ct. 2114, 23 L.Ed.2d 753; *Tatum v. United States,* 88 U.S.App.D.C. 386, 190 F.2d 612; *People v. Trotter,* 273 Cal.App.2d 538, 78 Cal.Rptr. 430; *People v. Watkins,* 248 Cal.App.2d 603, 56 Cal.Rptr. 734; *Jones v. State,* 232 Ga. 771, 208 S.E.2d 825; *Wilson v. State,* 222 Ind. 63, 51 N.E.2d 848; *State v. Lindley,* 545 S.W.2d 669 (Mo.App.); *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435; *Commonwealth v. Proietto,* 241 Pa.Super. 385, 361 A.2d 712; *Commonwealth ex rel. Goodfellow v. Rundle,* 203 Pa.Super. 419, 201 A.2d 615, transf. to 415 Pa. 528, 204 A.2d 446. See also *State v. Post,* 255 Iowa 573, 123 N.W.2d 11.

■ (b) The State's second line of defense is that defendant retained Mr. Dunbar privately and therefore cannot complain about ineffectiveness on Mr. Dunbar's part.

The State's claim may have some merit that a trial court is more responsible for the problem of ineffective counsel where the court itself selects and appoints an attorney for the accused than where the accused selects and retains his own attorney. Yet the constitutional right to counsel involves more than fixing the responsibility for the problem; the right constitutes part of the effort to secure trials which are fair and in accordance with law. If a miscarriage of justice occurs because of ineffective counsel, a miscarriage exists whether counsel was appointed or retained. We thus hold that if defendant substantiates the merits of his charge of ineffective counsel, within the established standard of performance, he is entitled to relief although he privately

retained Mr. Dunbar. While we realize that the decisions contain conflicting views on this subject, e. g. *State v. Benson,* 247 Iowa 406, 72 N.W.2d 438, we believe that the principle we have expressed is the better one. See *Crismon v. United States,* 510 F.2d 356 n. 2 (8 Cir.); *Garton v. Swenson,* 497 F.2d 1137 n. 4 (8 Cir.) ("This court has made no distinction in the standard to be applied as between retained and appointed counsel."); *United States v. Marshall,* 488 F.2d 1169 (9 Cir.); *Stokes v. Peyton,* 437 F.2d 131 (4 Cir.); *Ellis v. Oklahoma,* 430 F.2d 1352 (10 Cir.), cert. den. 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546; *English v. State,* 8 Md.App. 330, 335, 259 A.2d 822, 826 ("We note that there is no valid distinction between appointed counsel and privately employed counsel in determining the adequacy of representation of an accused."); *State v. Gomez,* 75 N.M. 545, 549, 408 P.2d 48, 50 ("It is immaterial if counsel has been appointed by the court or employed by the accused or by some one in his behalf.").

■ (c) We come therefore to the merits of defendant's contention that his attorney in the trial court ineffectively represented him. The modern standard of performance of defense attorneys in criminal cases is "whether under all the circumstances counsel's performance was within the range of normal competency." *Cleesen v. State,* 258 N.W.2d 330, 332 (Iowa). See also *Long v. Brewer,* 253 N.W.2d 549 (Iowa); *Zacek v. Brewer,* 241 N.W.2d 41 (Iowa); *State v. Townsend,* 238 N.W.2d 351 (Iowa). Recent decisions of the United States Supreme Court include *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342; *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592; and *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235.

Defendant lodges several charges against Mr. Dunbar each including several subcharges: failure to investigate the case, to conduct discovery, to review the State's evidence, to depose witnesses, to interview potential witnesses, to request a suppression hearing, to call a medical witness regarding the validity of defendant's *Miranda* waiver, to object to the coroner's report and to call the witness himself, and to object to evidence of a shotgun and shotgun shell.

Our difficulty in disposing of these charges one way or the other is lack of an adequate record. That difficulty has two aspects. One is that since the issue of inadequate representation was not presented in district court, most of defendant's charges are just that—charges, without adequate substantiation in the record. The charges are numerous and serious, and the case, a second-degree murder conviction, is of great importance to both sides. We are not justified in upholding or rejecting defendant's charges without a better record on them.

The other aspect of our difficulty is that since the ineffective representation issue was not threshed out in district court, the State has had no opportunity to show reasons if any for Mr. Dunbar's questioned conduct. As an example, Mr. Dunbar did not use an alleged suicide note written by Mrs. Kellogg (actually, the suicide aspect rests on inference), but the note was so plaintive and contained such profession of love for defendant that Mr. Dunbar may have regarded it as a boomerang. The same is possibly true of Mr. Dunbar's failure to open up the question of defendant's character as bearing on probability.

In the state of this record, we are unwilling to pass upon the issue of ineffectiveness of counsel, yet we think that defendant should have the opportunity to present the issue. We conclude that we should affirm the judgment but without adjudicating the issue of adequacy of Mr. Dunbar's representation of defendant. We leave that issue open. If defendant chooses to do so, he may raise that issue and obtain an adjudication upon it by postconviction proceedings under chapter 663A of the Code.

We thus reject all of defendant's contentions except the one relating to ineffective representation, which we leave open.

AFFIRMED.