# IN THE COURT OF APPEALS OF IOWA

No. 22-0459
Filed May 10, 2023

**JONATHAN ANTIONE BROWN,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.


        A postconviction applicant appeals the denial of relief on his conviction for murder in the second degree. **AFFIRMED.**



        Blake D. Lubinus, Brainard, Minnesota, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.


        Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

A jury found Jonathan Brown guilty of second-degree murder in the stabbing death of Timothy Washington. We affirmed his conviction on direct appeal. *See State v. Brown*, No. 16-1021, 2017 WL 3065148 (Iowa Ct. App. July 19, 2017). In this postconviction-relief (PCR) appeal, Brown contends his criminal trial attorneys were ineffective in two ways: (1) by not raising a fair-cross-section challenge to the jury pool and (2) by not providing zealous advocacy after Brown "backed out" of a plea deal. Brown also challenges the performance of his PCR trial attorney. Because Brown fails to show counsel breached a material duty in either the criminal or PCR proceedings, we affirm the denial of relief.

## I.      Facts and Prior Proceedings

After a sixty-hour work week in June 2015, union electrician Timothy Washington went to a friend's house to relax and drink. But the house party took an ugly turn. Outside, several fights broke out, including a one-on-one fight between Washington and another party goer. Then three other guests, including Brown, rushed up and joined the brawl. Witnesses testified that Brown stabbed Washington four to five times in the chest. Then Brown and the others ran, leaving Washington in the yard to bleed to death.

The State charged Brown with murder in the first degree. On the eve of his jury trial, Brown entertained a plea offer from the State that would have resulted in an indeterminate forty-five-year sentence. Mid-way through the plea colloquy, Brown changed his mind and decided to proceed to trial on the murder charge. After five days of testimony, the jury returned a verdict finding Brown guilty of

murder in the second degree, and the court sentenced him to an indeterminate fifty-year sentence.

Our court affirmed Brown's conviction, rejecting his claim that the district court abused its discretion in admitting evidence that he participated in other stabbings that occurred at the party. *Brown*, 2017 WL 3065148, at *1. We also found that the admission of hearsay statements from a video of Brown's police interview was harmless error given the probative force of the State's evidence. *Id.* at *2. Finally, we refused to find his trial counsel ineffective for failing to request a limiting instruction about the evidence challenged on direct appeal. *Id.* The supreme court denied further review, and procedendo issued in September 2017.

Self-represented, Brown petitioned for PCR in April 2018. The court appointed counsel, who withdrew when Brown retained Nate Nieman to represent him in July 2019. Nieman sought three continuances for the PCR trial, asserting he needed more time to review the record and draft an amended application.[1] But he never amended the application. The PCR trial took place by videoconference in February 2022. Nieman called Brown as his only witness. The State called Brown's two criminal trial counsel, Tomás Rodriguez and Trevor Andersen. At the end of the PCR hearing, Nieman rested on the arguments "contained in the pro se application." Two weeks later, the district court denied Brown's PCR petition. He now appeals.

---

[1] He filed those motions in July 2019, February 2020, and March 2021.

## II.      Scope and Standard of Review

As a baseline, we review PCR rulings for correction of legal error.  *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022).  But when applicants raise constitutional issues, including ineffective assistance of counsel, our review is de novo.  *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018).  Although Brown's right to effective assistance from PCR counsel is statutory rather than constitutional, we still apply a de novo review to those claims.  *See Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011); *see also Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (holding statutory right to counsel means the right to effective assistance of that counsel).  What's more, Brown may complain of ineffective assistance even though he privately retained his PCR counsel.  *See State v. Kellogg*, 263 N.W.2d 539, 543−44 (Iowa 1978).

## III.      Analysis

## A.  Ineffective Assistance of Criminal Trial Counsel

In his effort to obtain a new trial, Brown contends he received ineffective assistance from the attorneys assigned to his criminal case.  To merit relief, Brown must show his attorneys failed to perform an essential duty, and that failure caused prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  On the performance prong, we ask whether counsel acted within the normal range of competency, starting from the presumption that they did.  *See State v. Cromer*, 765 N.W.2d 1, 7–8 (Iowa 2009).  Brown "must rebut the presumption of competence by showing a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness."  *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) (cleaned up).  On the prejudice prong, Brown must

show his attorneys' errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694.

Brown alleges two omissions on the part of his criminal trial attorneys. First, he argues they should have raised a fair-cross-section objection to the jury pool. Second, he questions the zeal of their representation after he rejected a plea bargain on the eve of trial. We will examine each allegation in turn.

### 1. "*Plain*" Error?

In his PCR application, Brown alleged that defense attorney Rodriguez was remiss in "not objecting to the make-up of the jury." Brown claimed it was not a fair cross section of Polk County. The district court rejected that allegation, noting that Brown's trial predated *State v. Plain*, which adopted a new test for fair-cross-section claims. *See* 898 N.W.2d 801, 827 (Iowa 2017) (overruling reliance on absolute-disparity test in *State v. Jones*, 490 N.W.2d 787, 793 (Iowa 1992)). The district court reasoned that Rodriguez had no duty to raise a meritless objection.

Brown criticizes the district court's reasoning, insisting that "blind adherence to an old precedent that was overruled a scant fourteen months later betrays a lack of imagination and diligence of criminal counsel." Brown's criticism is misplaced. Our court rejected a similar claim of ineffective assistance of trial counsel when the applicant's conviction occurred before the court decided *Plain*. *See Bol v. State*, No. 19-0225, 2020 WL 3571807, at *3 (Iowa Ct. App. July 1, 2020) (citing *Thongvanh v. State*, 938 N.W.2d 2, 15–16 (Iowa 2020), which held *Plain* did not apply retroactively).

And even if Rodriguez could have made the disparity arguments later advanced by Plain's counsel, Brown has not offered enough data about his jury pool to show that such a challenge would have prevailed and won him a new trial. *See Jones v. State*, No. 18–0134, 2019 WL 3330451, at *6 (Iowa Ct. App. July 24, 2019) ("[B]ecause we cannot say trial counsel would have been successful in making a fair-cross-section challenge, we cannot find he breached a duty in failing to do so."). Like the district court, we find no breach of duty or prejudice on this issue.

### 2. Zealous Representation?

Brown also complains that Rodriguez "did not fully and fairly advocate for him" after he "backed out" of a plea deal with the State.[2] On that issue, Brown testified: "He told me that it was in my best bet to take the plea and not go to trial." Brown also testified that Rodriguez told his family that he was guilty and "should've took the deal." Rodriguez—who had three decades of experience as a criminal defense attorney—disputed Brown's testimony. He told the PCR court: "I did not have that conversation with any of his family members" and added "I don't have those types of conversations with family members." The district court found Rodriguez to be the more credible witness.

---

[2] Brown's argument heading also asserts that his attorneys "failed to provide discovery." But Brown does not develop that argument, so we decline to address it. *See Hyler v. Garner,* 548 N.W.2d 864, 876 (Iowa 1996) (refusing to "speculate on the arguments [an appellant] might have made and then search for legal authority and comb the record for facts to support such arguments").

Even if we believed Brown, it is unclear how counsel's assessment that he should have taken the plea deal rose to a breach of duty. Indeed, defense counsel is expected to give frank advice:

> A lawyer has a duty to give the accused an honest appraisal of his case. . . . The constitutional right to counsel does not mean counsel will be optimistic in his private appraisal of the evidence and his advice to the accused. Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.

*Brown v. United States*, 264 F.2d 363, 369 (D.C. Cir. 1959) (Burger, C.J., concurring).

Brown insists that the district court "ignored the very real breakdown in [his] trust in the zeal of his lawyers." But Brown is not challenging the criminal court's refusal to appoint substitute counsel.[3] *See generally State v. Lopez*, 633 N.W.2d 774, 778–79 (Iowa 2001) (explaining that the Sixth Amendment does not guarantee a "meaningful relationship between an accused and his counsel" and only a "complete breakdown in communication" is sufficient cause for substitution). Rather, Brown alleges that his attorneys were ineffective because he did not see them as enthusiastic in their advocacy. "When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job." *Dunbar*, 515 N.W.2d at 15. The applicant has to both "state the specific ways" counsel performed deficiently and "identify how competent representation probably would have changed the outcome." *Id.* So Brown's allegation is not specific enough to show the breach of a material duty. We thus affirm the district court's denial of relief on this claim.

---

[3] The day after the jury reached its verdict, Brown moved to remove court-appointed counsel. But they continued to represent him in posttrial motions.

**B. Ineffective Assistance of PCR Trial Counsel**

As a second line of attack, Brown contends we should remand for a new PCR trial because he did not receive effective assistance from attorney Nieman. The State argues that Brown did not preserve error on this claim because it was "never considered or ruled upon by the PCR court." But the State's argument overlooks decades of precedent holding that an ineffective-assistance-of-counsel claim is "an exception to the general rule of error preservation." *See State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982) (noting "these claims (realistically) are not made by attorneys against their own actions"); *see also Goode*, 920 N.W.2d at 526 (recognizing exception to error-preservation rule for claims of ineffective assistance of PCR counsel). So Brown's claim is properly before us.

As a backup position, the State contends that *Goode* recognizes only a "narrow exception" allowing an appellate court to reach the merits of an unpreserved claim that PCR trial counsel was ineffective, if the existing record is sufficiently developed to allow resolution. *See* 920 N.W.2d at 526. We agree with that reading of *Goode*. In fact, the parties there acknowledged that the record on appeal was "inadequate to address the new claim of ineffective assistance of postconviction counsel." *Goode*, 920 N.W.2d at 526. Like Goode, Brown would need more evidence to support his claim that he received ineffective assistance of PCR counsel. So we cannot decide his claim in this appeal.

The trickier question is what happens next. Brown asks that we remand the case for a new PCR hearing. He insists that remedy is the only way he can receive the level of representation to which he is entitled under chapter 822. But in *Goode*, our supreme court rejected the idea of a remand, finding it was "contrary to the

symmetry of our appellate process and our role as a court of review." *Id.* That said, *Goode* was decided before the legislature abrogated the relation-back doctrine of *Allison v. State*, 914 N.W.2d 866 (Iowa 2018). *See Brooks v. State*, 975 N.W.2d 444, 446 (Iowa Ct. App. 2022) (recognizing abrogation). And the supreme court relied on *Allison* in holding that Goode's claims of ineffective assistance of PCR counsel must be filed as a separate application in the district court. *Goode*, 920 N.W.2d at 525. As Brown notes on appeal, without the relation-back doctrine, he would be foreclosed from seeking relief in a new PCR because the three-year statute of limitations expired in September 2020. What's more, Brown argues that attorney Nieman's three requests for continuances contributed to the running of that clock.

We need not decide whether a remand would ever be proper to resolve a claim of ineffective assistance of PCR counsel. It is enough to decide that it is unnecessary here. We only "preserve" claims of ineffective assistance of PCR counsel for future proceedings when they meet the same standard of "stat[ing] the specific ways in which counsel's performance was inadequate and identify[ing] how competent representation would have changed the outcome." *Dunbar*, 515 N.W.2d at 15. Brown fails the *Dunbar* test. In this appeal, Brown complains about two aspects of Nieman's performance: (1) he requested three continuances, without ever amending the pro se application, and (2) he called no witnesses other than Brown. But Brown offers no suggestion as to how Nieman should have amended the application or what witnesses he should have lined up.[4] Without

---

[4] True, the district court mentioned that Nieman did not call Brown's family members to bolster his claim that Rodriguez told them Brown should have

more facts, we cannot tell that Nieman had a material duty to amend the PCR application or to call additional witnesses. As in *Dunbar*, Brown's claims are "too general in nature" to allow us to preserve them for a second PCR proceeding. *Id*. (finding "[f]or example, Dunbar does not propose what an investigation would have revealed or how anything discovered would have affected the result obtained below"). In the end, we can neither address nor preserve the claim that PCR counsel was ineffective.

**AFFIRMED.**

---

accepted the plea deal. But as discussed above, proving those conversations occurred would not have shown a breach of duty.